[1] The suit is by the widow of Sam Satz as the beneficiary named in a certificate issued to her husband for $1,000 life insurance as an employee of Genelle Garment Co., Inc.; the employees of the garment company being covered by a group life insurance policy issued by The Prudential Insurance Company of America.
[2] At the direction of Sam Satz, the employee, the garment company, the employer, deducted seventy-five cents per month from his earnings as a contribution toward the payment by it of the premium on the group policy of insurance.
[3] The group policy was issued on April 6, 1939, to take effect on the 1st day of March, 1939. Satz was an employee on those dates and continued as such until his death on May 21, 1943. However, Satz became sick on December 14, 1942, which was his last day of active service for his employer. Thereafter he was totally incapacitated until he died on May 21, 1943, of coronary occlusion. However, the employer's records show that Satz continued to be considered an employee after he became ill and until his death. The employer paid the group insurance premium on Satz' certificate until March 1, 1943, at which time the insurance company canceled the group insurance policy. No notice was given to Satz that his certificate or the group insurance policy was to be or had been canceled. The correctness of the insurance company's action in cancelling or refusing to renew the group policy is not questioned in this case.
[4] Both the group policy and the certificate to Satz contained a clause under the heading of "Extension of Death Benefit," providing that it, while the policy was in force the employee, prior to the sixtieth anniversary of the date of his birth and prior to the termination of his employment as defined in the policy, and after having been continuously insured under the policy for at least one year immediately preceding the last day on which he was actively at work, became totally and permanently disabled as a result of bodily injury or disease so as to be wholly prevented thereby from engaging in any business or occupation and from performing any work for compensation of monetary value or for profit, such employee would be entitled to the benefits of this section. Then follow the extension privileges, which we omit, because, as shown by the terms of the clause, it can only be taken advantage of by an employee prior to the sixtieth anniversary of the date of his birth and prior to the termination of his employment. The record shows Satz was more than sixty years of age when the policy was issued, and there was no termination of his employment before his death.
[5] The group policy and the certificate also contained a clause as follows:
[6] "Conversion of Employee's Insurance. — Within thirty-one (31) days: (a) after termination of employment of an Employee insured hereunder, or (b) prior to the termination of his insurance hereunder if insurance on his life has been continued hereunder in accordance with the provisions of the section of this Policy entitled `Extension of Death Benefit,' an Employee may, without evidence of insurability, obtain an individual policy of life insurance, as hereafter provided, upon application therefor in writing and payment, at any time within said thirty-one (31) days, of the first premium thereon. Such individual policy shall become effective only upon termination of his insurance under this Policy, and may be on any of the forms customarily issued by the Company (except policies of term insurance and policies with any form of total and permanent disability benefits) for an amount equal to the amount of insurance for which he is insured under this Policy on the date of the discontinuance of his insurance hereunder. The premium for such individual policy shall be at the then *Page 482 
current rates of the Company according to the class of risk to which such Employee belongs and at the age attained by him at that time."
[7] A further clause headed "Termination of Contributory Insurance," provides that subject to the extension of death benefit clause, the contributory insurance on the life of the employee shall automatically cease upon the date of cancellation of the policy or upon the date the employee fails to make a contribution when due, whichever date may be the earlier, or thirty-one days after the date of termination of the employee's employment if the termination precedes the date of cancellation of the policy and such default in payment of contribution.
[8] A jury being waived, the case was tried before the court, resulting in a finding and judgment in defendant's favor, from which plaintiff appeals to this court.
[9] Only two points are relied upon by appellant: (1) that the cancellation of the group policy without prior notice to the employee insured did not have the effect of canceling the employee's certificate of insurance, and (2) that the finding of the trial court that the employer was the agent of the insured in collecting monthly premiums was erroneous.
[10] The law is well settled in the case of Crawford v. Metropolitan Life Ins. Co., Mo.App., 167 S.W.2d 915, 924, and in the case of Longley v. Prudential Ins. Co. of America, Mo.App., 161 S.W.2d 27, as well as in several other cases, that a contract of group insurance is one between the insurer and the employer for the benefit of the latter's employees, and that the certificate of insurance which is issued to the individual employee is merely a statement to him that he is insured under the group policy. Therefore, the rights of an employee or his beneficiary are to be determined under the provisions of the contract between the insurer and the employer. The burden is upon the plaintiff beneficiary to show that the deceased employee was insured under such policy at the time his death occurred.
[11] The whole burden of appellant's contention in this case is that the cancellation of the group policy was ineffective as to her husband's certificate because no notice was given to him of such cancellation or intended cancellation.
[12] Appellant's husband held a certificate of contributory insurance on his life. The group policy expressly provided that, "the contributory insurance on the life of any Employee insured hereunder shall automatically cease upon the date of cancellation of this Policy or upon the date such Employee fails to make a contribution when due, whichever date may be the earlier." It is not disputed that on March 1, 1943, the group policy was canceled in accordance with its terms and conditions, and thereafter no premiums were paid on it. It then follows that the contributory insurance on the life of Sam Satz, the employee, automatically ceased on March 1, 1943, in accordance with the terms of the policy. If Satz' insurance automatically ceased on March 1, 1943, he was, of course, not insured on May 21, 1943, when he died.
[13] It is conceded in the case that the insurer gave notice to the employer, but did not give Satz notice of its intention to cancel the group policy, and appellant contends that in view of the holding in the case of Nick v. Travelers Ins. Co., 354 Mo. 376, 189 S.W.2d 532, and Butler v. Equitable Life Assur Soc. of United States, 233 Mo. App. 94, 93 S.W.2d 1019, the cancellation was ineffective as to Satz.
[14] Not only are the terms of the policies in the Nick case and the Butler case different from those contained in this policy, but the facts were entirely different. The Nick case was tried on conflicting evidence as to whether the employee's cessation from work was a temporary layoff or the termination of his employment. His employer took the position that Nick's employment had terminated, and that it had so advised the insurance company. The question involved in the Nick case was whether Nick was entitled to notice under a conversion clause requiring application for equivalent insurance to be made within thirty-one days after termination of employment, and provided that temporary layoffs for any cause other than physical disability should not be *Page 483 
considered as termination of employment unless employer should so elect, insured employee was entitled to notice from employer that his employment was terminated before his insurance could be terminated for such cause during period he was only temporarily laid off and not discharged. A mere reading of the conversion clause in this policy shows that it is materially different from that in the Nick case.
[15] In this case it is undisputed that Satz' employment was never terminated prior to his death, and not having been terminated the question was whether he was entitled to the conversion privilege in the policy, and corollary thereto was notice to him required of the cancellation of the group policy in accordance with its terms? The policy in this case does not provide for notice to an employee of its cancellation, and if such cancellation is in accordance with the terms of the policy and no rights of the employee are affected by a cancellation there can be no reason for such notice. Another distinction between this case and the Nick case is that Nick (regardless of whether he was permanently or temporarily laid off) was killed in an automobile collision while, for aught that appears, he was still an insurable risk, whereas Satz was incapacitated from work because of heart disease from and after December 14, 1942.
[16] In the Nick case a number of cases and texts are cited and commented on, all of which are to the effect that "the group policy cannot be cancelled or any of its effective provisions eliminated, by either the employer or insurer, except in a manner provided by the policy, without giving such employee notice of the intended cancellation or modification, so that he may timely exercise any conversion privilege which may be available to him under the terms of the policy of where such privilege is not given, in order that he may seasonably obtain similar insurance protection on his own account elsewhere." Poch v. Equitable Life Assur. Soc. of United States, 343 Pa. 119, 22 A.2d 590, loc. cit. 594, 142 A.L.R. 1279. The Poch case is cited with approval in the Nick case. Those cases hold that the group policy cannot be canceled except in the manner provided by the policy without notice to the employee. It is defendant's contention, which is not controverted by plaintiff, that this group policy was canceled on March 1, 1943, in accordance with the terms and conditions of said policy, or, in other words, "in the manner provided by the policy."
[17] Sam Satz had no right to extended insurance for several reasons but principally because he was past sixty years of age when he was insured under the group policy, and it provided that the extension of death benefit clause was only applicable to an employee prior to the sixtieth anniversary of the date of his birth. He was not entitled to a converted policy because it is conceded that his employment had not been terminated or his insurance extended under the extension of death benefit clause, one of which conditions would have to prevail in order for him to have a right of conversion. He could not have obtained similar insurance on his own account elsewhere because plaintiff's evidence shows that he was stricken with heart disease on December 14, 1942, and remained so afflicted and incapacitated until his death on May 21, 1943, and consequently he was not an insurable risk and could not have obtained similar insurance elsewhere. Therefore, not only was the group policy, cancelled in the manner provided in the policy, but a notice to Satz of the intended cancellation would have availed him nothing. There is an appropriate Latin phrase, viz.: cessante ratione legis, cessat ipsa lex, which translated is, the reason of the law being at an end, the law itself ceases.
[18] The relationship between the insurer, the employer and the employee is clearly set out in the case of Crawford v. Metropolitan Life Ins. Co., supra, and Longley v. Prudential Ins. Co. of America, supra, and cases therein cited. The trial court did not err in stating as a basis for his finding that the employer was the agent of the insured in collecting premiums. When the certificate was issued to the insured, Sam Satz, he signed a card containing information required by the insurance company in connection with the group policy, which among other matters contained *Page 484 
the following: "I hereby authorize Genelle Garment Co., Inc. (Employer), to deduct from my wages (salary) an amount equal to my portion of the premium, the initial deduction to be .75 cents per month," etc. Whether or not the employer is the employee's agent throughout the whole transaction, it is clear that in the matter of deducting his contributory part of the premium for the group policy the employee did authorize his employer to act as his agent.
[19] After carefully considering the cases, we conclude that the policies and the facts in the cases of Nick v. Travelers Ins. Co., supra, and Butler v. Equitable Life Assur. Soc. of United States, supra, upon which appellant relies, are to be distinguished from the policy and facts in this case, and those cases are not controlling in this case, and that under the terms of the policy here involved and plaintiff's evidence the employee's insurance automatically ceased when the group policy was canceled as of March 1, 1943, and therefore was not in force on May 21, 1943, when Satz died.
[20] Ordered that the judgment of the circuit court be affirmed.
[21] ANDERSON, P. J., and McCULLEN, J., concur.