Date of execution fixed for Friday, August 24, 1956.

All concur.

Helen **HUTCHINSON** and J. Carl Fogle, Appellants,

v.

**METROPOLITAN LIFE INSURANCE COMPANY**, a Corporation, Respondent.

No. 45003.

Supreme Court of Missouri,

Division No. 1.

July 9, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 10, 1956.

William W. Cochrane, Jr., C. W. Crossan, Kansas City, Robert D. Johnson, Marshall, for appellants.

Henry G. Eager, Kansas City, William T. Bellamy, Jr., Marshall, for respondent, William T. Stuchell, Jr., New York City, Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, of counsel.

HOLLINGSWORTH, Judge.

In this action, plaintiff Helen Hutchinson, widow of Newton H. Hutchinson, deceased, joined with her assignee, one J. Carl Fogle, sued defendant, Metropolitan Life Insurance Company, to recover the sum of $15,000, plus the further sum of $2,500 for attorneys' fees and vexatious refusal to pay, claimed to be due her as beneficiary under a contract of life insurance allegedly entered into between defendant, as insurer, and Newton H. Hutchinson, as the insured. Defendant admitted the death of Newton H. Hutchinson and denied that it ever entered into the contract pleaded in plaintiffs' petition. Upon trial, the jury returned a verdict in favor of plaintiffs in the sum of $10,000 "on the contract" and the sum of $1,008 attorneys' fees, for which total sum judgment was entered. Thereafter, defendant's motion to set aside the judgment and to enter judgment for defendant in accordance with its motion for directed verdict filed at the close of all of the evidence was sustained and final judgment was entered for defendant, from which plaintiffs have appealed.

The amount in dispute being in excess of $7,500, exclusive of costs, jurisdiction of the appeal is vested in this Court. Article V, Section 3, Constitution of Missouri, V.A.M.S.

Helen Hutchinson (hereinafter referred to as though she were the only plaintiff), her husband, Newton H. Hutchinson, and their daughter resided in Kansas City, Missouri, during and prior to the year 1946. Mr. Hutchinson was in the produce business at the City Market in Kansas City, but sold and delivered produce from his warehouse to stores outstate. Mr. Hutchinson, plaintiff and their daughter were holders of policies of life insurance priorly issued by defendant. During the year 1946, Earl R. James, as agent for defendant, began to call at the Hutchinson home to collect the premiums on their policies. James suggested to plaintiff that her husband, whom James had never met, needed more insurance. Pursuant to that suggestion, an appointment was made for James to call at the Hutchinson home on the evening of November 12, 1946, at which meeting were present plaintiff, Mr. Hutchinson and James. The discussion and transaction of that evening constitute the basis of plaintiff's action.

James produced and exhibited to Mr. Hutchinson a single page of printed matter, on which he had written in ink the words and figures hereinafter identified by underscoring, reading as follows:

11 40 Per Month

---

A Plan of Double Protection Proposed for

Mr.   Newton Hutchinson

Providing $ 2500 00    Life Insurance Paid Up at Age 65

After age 65 there will be no more premiums to pay, and your protection will be continued in force as long as you live.

Up to Age 65 You Have Double Protection

| Amount of | 5000 00 | Natural Death |
|---|---|---|
| Life  Insurance,  $ 10000 00 | | Accidental  Death |

| This can be arranged to provide a cash payment, for your final expenses, of $ 1000 00 | and | An income for your family's support of $ 50 00    a month for  12  years. | With Present Insurance |
|---|---|---|---|

Or

For Your Later Years

> A Cash Value at Age 65,
>      of approximately......$ 1872 00
> which you can use, if you wish to provide a
> life income for yourself.

Dividends Declared When Earned

The foregoing is only a general description of benefits available under policies providing the protection outlined.  The exact provisions, terms, and conditions are set forth in detail in the policy contracts.

Metropolitan Life Insurance Company

_____           E. James
  Dated                  Representative
                           JA 8798

Plaintiff's version of what transpired at that meeting was: A discussion of the plan above set forth ensued.  After her husband had read the plan, he said to James, "Well, I like it and I'm going to take it, and I want my wife to be the beneficiary." James said, "Well, you give me $11.40." Her husband inquired, "Why should I give you the $11.40 now?  Why don't I wait until I get my policy?"  James replied, "You pay me now, and you're insured right now."  Her husband then and there paid James $11.40 in cash.  James told her husband he had a good thing and that his wife and daughter were "taken care of".  James then said, "I'm going to ask you a few questions now", took papers from his briefcase, asked questions, wrote the answers down, and said, "Will you sign right here?  I'm going to finish this up myself and let you go to bed.  I know you are getting sleepy and you have to get up early."  James then showed her husband where to sign and he signed.  Later, when James was at the Hutchinson home collecting premiums on the old policies, Mr.

Hutchinson asked him about the new policy and James told him, "Don't worry about it, you are insured until I tell you different."

Mr. Hutchinson was found lying unconscious in a concrete driveway of his home on January 2, 1947, a cold, icy, snowy day. Plaintiff's evidence tended to show that he had fallen, striking ·his head on the concrete, thereby receiving a brain injury, which caused his death within, perhaps, less than an hour. Defendant's evidence was that he suffered a coronary occlusion from which he fell unconscious and died. On January 6th or 7th, James advised plaintiff that defendant declined to insure her husband and showed her a paper dated January 2nd. At the same time he tendered her the premium theretofore paid ($11.40), which she refused to accept.

On cross-examination, plaintiff identified her husband's signature on the application made to defendant on the night of November 12, 1946, for a policy of life insurance in conformity with the plan submitted. She admitted she was present when her husband signed it at their home in the presence of James as a part of the "interview" she had been testifying about; admitted that in preparing the application, James asked her husband questions and wrote down the answers; admitted that James gave her husband a printed form of receipt for the $11.40, which she had delivered to her attorney, Mr. Crossan; admitted that after her husband signed the application James, speaking with reference to a physical examination of her husband, said to him, "Now, our doctor will contact you"; admitted that some time thereafter a doctor called her husband and that her husband was examined by the doctor; admitted that following the examination James came to plaintiff's home with a form for her husband to sign consenting that Dr. Wilhelmy (whom Mr. Hutchinson, as his application revealed, had consulted in September, 1946) might give a statement to defendant as to his examination of Mr.

Hutchinson on that occasion, and that he signed the consent.

"Q. The point is, didn't you know that the company was asking for a statement from Dr. Wilhelmy so that it could consider it in passing on Mr. Hutchinson's insurability, and whether it would issue the insurance? A. Well, we knew they must want it for a reason, but I didn't think anything about it."

James' testimony was: His contract with defendant, dated June 29, 1938, restricted his authority to soliciting applications for insurance, and further provided: "You are not authorized to make, alter or discharge the Company's contracts; to waive forfeitures; to quote premium rates other than those published by the Company; or to bind the Company in any way not specifically authorized in writing by an Officer of the Company." He never at any time issued or signed a policy in behalf of his employer. He did not discuss the extent of his authority with the Hutchinsons, nor did he show them his contract. On the night in question, he filled in and signed the plan of insurance hereinabove set forth (printed forms of which are furnished him by defendant) and presented it to Mr. Hutchinson, who, after some discussion, said he was willing to apply for the plan therein stated. James then produced an application, recorded thereon the answers made by Mr. Hutchinson, handed the application to him, who appeared to read it, and who then and there signed it. After the application was signed, Hutchinson paid the premium, for which James gave him a receipt, the blank form of which James detached from the application. At no time did Mr. Hutchinson say, "I accept your proposal", nor did James tell him, "You are now insured."

The application, admittedly signed by Hutchinson, provided immediately above applicant's signature:

*"It is understood and agreed that:*
1. The foregoing statements and an-

swers are correct and wholly true and, together with the answers to questions on Part B hereof, shall form the basis of the contract of insurance, if one be issued.

"2. No agent, medical examiner or any other person, except the Officers of the Company, have power on behalf of the Company: (a) to make, modify or discharge any contract of insurance or (b) to bind the Company by making any promises respecting any benefits under any policy issued hereunder.

\* \* \* \* \* \*

"4. The Company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered, \* \* \* except that if the applicant pays in cash to the Company, on the date this application is signed, an amount equal to the full first premium on the policy applied for and if this application is approved at the Company's Home Office \* \* \*, then the policy applied for shall be in force from the date of the application."

The receipt given by James to Mr. Hutchinson and delivered by Mrs. Hutchinson to her attorney was lost by her attorney. It is unquestioned, however, that it had been detached from the application signed by Mr. Hutchinson and stated that the amount of $11.40 received from Mr. Hutchinson was "on account of application made this date to the Metropolitan Life Insurance Company." It also stated: *"If the sum collected at the time the application is signed is equal to the full first premium on the policy applied for and if such application is approved at the Company's Home Office for the class, plan and amount of insurance therein applied for, then the insurance applied for shall be in force from this date,* but otherwise no insurance shall be in force under said application unless and until a policy has been issued and delivered, \* \* \*."

The records of defendant show that on December 27, 1946, there was a "medical decision" entered on the application reciting "Decline", and that on January 2, 1947, a notice was sent to James advising him that defendant, on that date, declined the application and directing him to so inform applicant and to refund any advance payment. This suit was filed June 13, 1953.

Plaintiff insists that "when Newton Hutchinson orally accepted defendant's printed proposal and paid the premium demanded by defendant's representative James, a contract of insurance was created on the life of Hutchinson." Her argument runs in this wise: The word "plan", as used in the document submitted by defendant's agent to Mr. Hutchinson, means "contract", and the phrase in said document reading "A Plan of Double Protection Proposed for Mr. Newton Hutchinson" means "A Contract of Insurance Offered to Mr. Newton Hutchinson"; that the proposed "contract of insurance" became effective when Mr. Hutchinson said, "I'm going to take it, and I want my wife to be the beneficiary", and James said, "You pay me now, and you're insured right now", and Mr. Hutchinson paid the premium; and that the subsequent issuance of the receipt and execution of the application by Hutchinson and defendant's refusal to issue him a policy were ineffective to annul the contract made by the written proposal, the oral acceptance and payment of premium.

Plaintiff concedes that the instant facts present a case of first impression in Missouri. The case which plaintiff presents as the nearest approach to her case is that of Marderosian v. National Casualty Co., 96 Cal.App. 295, 273 P. 1093. There the insurance company, by virtue of a contract entered into with a newspaper, the Fresno Bee, permitting it to issue the insurance company's accident policies—no medical examination required—to Bee subscribers, was held to have constituted the newspaper its general agent. A subscription solicitor for the Bee gave Marderosian a descriptive

folder and a blank form of "insurance policy contract" and advised him that if he became a subscriber to the Bee he could take out such insurance whenever he desired. Marderosian duly subscribed for the Bee and thereafter, on January 17th, filled out and signed the "insurance policy contract" and delivered it with the premium to a Bee carrier, who delivered it to the Bee office on January 18th. The manager was absent and did not return to his office until January 19th, on which date, about noon, the newspaper without further ado, and in accord with custom, mailed a policy to Marderosian. However, on January 18th, Marderosian was accidentally injured, from which injuries he died about 4 p. m., on January 19th, some four hours after his policy had been issued. That is not this case. In that case, Marderosian had fully complied with all of the requirements necessary to obtain the policy. Nothing remained upon which his acceptance as an insurable risk was conditioned; he was accepted and a policy was issued to him.

In the instant case, there is no question that the plan of insurance submitted by defendant's agent to Hutchinson actually contemplated, as a condition to the issuance of a contract of insurance thereunder, even though the proposal did not expressly so state, a written application, a physical examination of the applicant, acceptance of the applicant as an insurable risk, and the issuance and delivery of a policy setting forth the terms and conditions of defendant's liability thereunder. So prevalent is that practice and custom in regard to the issuance of policies of the amount and type here involved that few adults of today remain in ignorance of it. The old policy ($2,315) held by Mr. Hutchinson in defendant company (and paid in due course) had been issued pursuant to his signed application (similar to the one here in controversy) and submission to a physical examination.

The plan proposed for Mr. Hutchinson on November 12, 1946, which he admittedly read, stated that it was *"only a general description of benefits available under policies providing the protection outlined"*, and that the terms and conditions of the benefits contemplated by the plan were *"set forth in detail in policy contracts"*. (Emphasis ours.) Thus, on its face, it showed it was not intended to become a contract of insurance. Consequently, the acceptance of the plan could mean no more than an expression of willingness to purchase a policy of insurance such as was contemplated by the plan. Such an acceptance, standing alone, would not result in a binding contract. Dobbins v. City Bond & Mortgage Co., 343 Mo. 1001, 124 S.W.2d 1111, 1115 [3].

Mr. Hutchinson's actions thereafter make crystal clear that he knew a policy remained yet to be issued before he had a binding contract of insurance. He not only answered the questions asked him by James, but he subscribed his name to the application in which James had recorded his answers. Immediately above his signature there was the solemn declaration that he understood and agreed his answers were to become the basis of the contract of insurance applied for "if one be issued"; that no agent, other than an officer of the company, could make or modify any contract of insurance or bind the company respecting benefits under any policy issued under the application; and that no liability arose under the application until it had been received, approved and a policy issued. Either immediately before or immediately after the preparation and execution of the application, Mr. Hutchinson accepted and thereafter retained the receipt which recited that it was issued on account of the application and that the money for which the receipt was given should be refunded if the application were declined.

It is of no importance whether the premium was requested and paid or the receipt given prior or subsequent to the filling in and signing of the application. Each of these details, in effect, was contemporaneous with and constituted an integral part of

one transaction. Contemporaneously with the execution of the application and the issuance of the receipt, Mr. Hutchinson was told that "our doctor will contact you". The doctor did communicate with him and he submitted to examination. Thereafter, as a part of the examination, he signed a written consent that his own physician give the company a statement as to his physical condition in September previous to his application in November. Plaintiff says that "*we* knew they must want it for a reason", but *she* "did not think anything about it." That testimony does not constitute evidence that Mr. Hutchinson did not know and fully understand the purpose and significance of the examination.

In the absence of fraud or mistake, neither of which is pleaded or proved, the solemnly subscribed declaration made by Hutchinson in his application and his acts thereafter prevail over the oral testimony of plaintiff and control the disposition of this case. Dickinson v. Bankers Life & Casualty Co., Mo.App., 283 S.W.2d 658, 663. Neither is the fact, if it be a fact, that Mr. Hutchinson did not read the application or the receipt of aid to plaintiff. "The law affords to everyone a reasonable protection against fraud in dealing, but it is not an indulgent guardian which can go to the romantic length of giving protection against the consequences of indolence, folly or careless indifference to the ordinary and accessible means of information." Dickinson v. Bankers Life & Casualty Co., supra.

It follows that the evidence does not support plaintiff's contention that there was a binding contract of insurance entered into between Mr. Hutchinson and the defendant prior to the execution of the application. See Distassio v. American United Life Ins. Co., 238 Mo.App. 279, 179 S.W.2d 610, 612–613 [4], [5].

The judgment of the trial court is affirmed.

All concur.