Bernice BURCKHARDT, Appellant,

v.

GENERAL AMERICAN LIFE INSURANCE CO. et al., Respondents.

No. 35586.

Missouri Court of Appeals, St. Louis District, Division Two.

Dec. 9, 1975.

Rehearing Denied Jan. 23, 1976.

Mogab, Hughes & Green, Inc., Richard L. Hughes, St. Louis, for appellant.

Kortenhof & Ely, Joseph M. Kortenhof, Frank E. Strzelec, St. Louis, for respondents.

KELLY, Judge.

Bernice Burckhardt, plaintiff-appellant (hereinafter plaintiff), appeals from the action of the trial court sustaining separate motions of defendant-respondents, General American Life Insurance Company (hereinafter General American) and McDonnell-Douglas Corporation (hereinafter McDonnell) to dismiss her Second Amended Petition for failure to state a claim and entering judgment dismissing her petition. We reverse and remand.

Plaintiff's Second Amended Petition was in three counts. In Count I General American is the sole defendant. Plaintiff alleged that she is the widow of Andrew Burckhardt who, during his lifetime, had been an employee of McDonnell; that in the fall of 1968 General American began negotiations with McDonnell to enter into a group life insurance contract whereby optional additional life insurance benefits would be provided for salaried employees of McDonnell. She further alleged that although all of the terms of the group policy had not been finalized, in March of 1969 General American and McDonnell agreed to offer optional additional life insurance benefits to McDonnell's salaried employees; that General American, in conjunction with its agent, McDonnell, prepared and submitted to her husband, Andrew Burckhardt, and other salaried employees of McDonnell, an "offering brochure" outlining the terms and conditions of the optional additional life insurance and further advised her husband and other salaried employees of McDonnell that to become members of the insurance group, membership had to be accepted by April 7, 1969, the effective date of the "new program." The "offering brochure," a memorandum dated March 14, 1969, was attached to plaintiff's petition, marked "Exhibit 'A'" and incorporated by reference into the Second Amended Petition. This document,

on a McDonnell letterhead, reads as follows:

"Memo No. JHG–150
14 March 1969

To: All Salaried Employes of MCAIR, MCAUTO, MDAC–ED and MDC Corporate Offices–St. Louis

From: J. H. Cinnater

Subject: Optional Additional Life Insurance Plan and Enrollment Therein

1. As a salaried employee, you are eligible under this new program, which becomes effective 7 April 1969, to purchase an additional amount of life insurance and accidental death and dismemberment benefits equal to the amount provided at no cost to you, by your basic program. Purchase of this additional insurance will also make you eligible for post-retirement life insurance. Your additional life and accidental death and dismemberment benefits cannot be more or less than the amount of your basic life insurance.

3. Your contribution of 66¢ per thousand per month prior to retirement will be deducted in equal payments from *each of the first two paychecks of the month.*

3. If you retire under the McDonnell Douglas Retirement Income Plan, you will be entitled to post-retirement life insurance, provided you enroll in the additional insurance of the plan during this period. Upon retirement,

80% of the additional life insurance benefit prior to retirement will be continued; on the first anniversary of your retirement, 60% of this benefit will be continued; and beginning with the second anniversary of your retirement, 50% will be continued, which is your *Lifetime Continued Amount.* Your accidental death and dismemberment benefit ceases at retirement or at age 65 whichever occurs first. At retirement, your contribution of $1.50 per thousand per month based on *Lifetime Continued Amount* will be deducted from your monthly pension check.

4. You are urged to purchase the additional insurance made available to you.

5. The attached enrollment card should be completed indicating authorization of the deduction or rejection and returned to your supervisor promptly. *No enrollment card received after 7 April 1969, will be accepted without evidence of insurability,* unless you were on an authorized leave or vacation during the enrollment period. Your additional life insurance will be equal to the amount of basic life insurance shown on the enrollment card.

6. The beneficiary for your additional life insurance will be the same as on your basic life insurance.

(signed) J. H. Cinnater

J. H. Cinnater
Treasurer"

Exhibit "B", the enrollment card, reads as follows:

" McDonnell Douglas Corporation Salaried Employees Additional
Group Life Insurance Enrollment Card

| ENROLLMENT | REJECTION |
|---|---|
| I ACCEPT the additional amount of life and accidental death and dismemberment insurance to which | I DO NOT ACCEPT the additional life and accidental death and dismemberment insurance offered |

my current base rate or, if changed, my future base rate of pay may entitle me to under the group life insurance plan offered by the company and authorize the company to deduct from my pay such amounts as are now or may in the future be required of me for such insurance.

by McDonnell Douglas Corporation and if I make my future request for the additional group life accidental death and dismemberment insurance I may be required to show evidence of insurability to the insurance company.

I also understand that by rejecting the additional insurance I will not be eligible to receive life insurance after retirement through the salaried retirement life insurance program.

| Employe signature | Date | Employe signature | Date |

MDC 245 17 APR 701"

Appellant further alleged that her husband accepted General American's offer and thereby became a member of the insured group by signing and returning Exhibit "B"—the enrollment card—to General American or its agent McDonnell before he died and paid the required premium to General American's agent, McDonnell; that Andrew Burckhardt died on April 13, 1969; and that she, as beneficiary under the terms of her husband's optional additional group life contract has performed all conditions precedent to payment under the terms of the group insurance contract, "the terms of which are set out in Exhibits 'A' and 'B'; " that she has often demanded that General American pay her the principal sum due under the contract, but General American has refused and continues to refuse to pay all or any part of the $20,000.00 insurance proceeds. She prayed judgment against General American for $20,000.00 together with her costs.

Count II of plaintiff's Second Amended Petition pled, in the alternative, and incorporated by reference all of the allegations of Count I except those contained in paragraph 5 of that Count.[1] Plaintiff then fur-

ther averred that in March of 1969 General American, acting through and in conjunction with McDonnell, its agent, and pursuant to the provisions of a draft "master" agreement with McDonnell "dated November, 1968," offered optional additional life insurance to salaried employees of McDonnell by the "offering brochures," Exhibit A, which set out the terms of the insurance; and directed the employees accept or reject the offer by signing Exhibit B, the enrollment card. A copy of the "draft" master agreement was attached to the petition as "Exhibit 'C' " and incorporated by reference therein. Plaintiff further alleged that pursuant to the provisions of the "offering brochure" her husband accepted the offer by signing and returning the enrollment card to General American's agent, McDonnell; that the return to work clause in the draft master agreement was never communicated to her husband nor was it mentioned in the "offering brochure; " that General American and McDonnell, with full knowledge of the fact that her husband was then in poor health and not working, nevertheless failed and neglected to advise him that the draft of the master agreement

1. Paragraph 5 of Count I of plaintiff's petition was the paragraph which alleged the preparation and submission of the "offering brochure" to McDonnell's salaried employees and her husband's acceptance.

contained a return to work clause requiring group members to return to work before becoming eligible for life insurance benefits under the contract, or that the "offering brochure" was not consistent with the draft master contract in this respect, or that although he could become a member of the insured group by accepting General American's offer and paying the required premium, the policy benefits would nevertheless not take effect until he had returned to work; that thereby General American is estopped to raise the return to work clause as a defense to its obligation to make payment of the group benefits to plaintiff. She further alleged full performance of all conditions precedent to receiving payment under the terms of the policy, her demand for payment on a number of occasions, and the refusal of General American to pay all or any part of the principal amount of the policy, to-wit: $20,000.00, and seeks judgment in that amount from General American.

Count III of the Second Amended Petition alleged that plaintiff was the widow of Andrew Burckhardt; that he was a salaried employee of McDonnell who died on April 13, 1969; and that she was the third party beneficiary under an agreement between McDonnell and Mr. Burckhardt, the terms of which are set out in the "offering brochure" and the enrollment card which were attached to her Second Amended Petition as "Exhibits 'A' and 'B'" and incorporated therein by reference; that McDonnell, acting as the alleged agent of General American, but in reality an undisclosed principal, "subsequently" prepared and submitted to plaintiff's husband a proposal outlining the terms and conditions of an offer to provide life insurance benefits for him; that McDonnell advised "decedent" that he was to accept or reject the offer by signing the enrollment card; that Mr. Burckhardt accepted McDonnell's offer by signing and

returning the enrollment card to McDonnell before he died and paid the required premium to McDonnell and that thereby McDonnell became obligated to plaintiff in accordance with the terms of the agreement in the sum of $20,000.00; that she has performed all conditions precedent to receiving payment under the policy and has demanded payment but McDonnell and General American have refused to pay all or any part of the principal amount of the policy in the amount of $20,000.00. She prayed judgment on this Count against both General American and McDonnell, jointly and severally, in the amount of $20,000.00 together with her costs.

Both defendants, General American and McDonnell, filed separate motions to dismiss Counts I, II and III of Plaintiff's Second Amended Petition for the reason that they "fail to state a claim or cause of action upon which relief can be obtained." The trial court sustained the motions of each of the defendants. Plaintiff filed a Motion to amend this order of the trial court or in the alternative for a new trial. The motion to amend sought to have the trial court indicate whether it was its intent to sustain the motions of defendants with or without prejudice, and if it was intended to be without prejudice to allow the plaintiff adequate time to file another amended petition. The alternative motion for new trial was on the grounds that if the order was intended to be with prejudice it deprived the plaintiff of her constitutional right to a jury trial and deprived her of her property without due process of law. These motions were argued, submitted and overruled.

On appeal plaintiff asserts that the trial court erred in sustaining the motions of each of the defendants to dismiss Counts I, II and III of her petition because "on the face of the petition all three Counts clearly state a cause of action." [2] The respondents

---

**2.** Plaintiff's Points and Authorities also contend that "Based on the Record, Interrogatories and Deposition plaintiff is entitled to a directed verdict." We do not consider this portion of her Points and Authorities because it goes beyond the scope of review of an appellate court in an appeal from a mo-

contend that the trial court properly dismissed Count I of plaintiff's petition because it is based upon plaintiff's contention that the memorandum and enrollment card constituted the contract of insurance between plaintiff's decedent and General American, a contention, they say, that is contrary to Missouri law. With respect to the trial court's action in sustaining their motion to dismiss Count II of plaintiff's petition, both defendants take the position that the action of the trial court was correct because the doctrine of estoppel, relied on by plaintiff in Count II of her petition, cannot be used to create insurance coverage where it would not otherwise exist under Missouri law and because McDonnell is not the general agent for General American. With respect to Count III, the defendants contend that the trial court's action was correct because plaintiff's contention that McDonnell was an undisclosed principal of General American is a mere conclusion and not supported by any pleaded facts and because McDonnell was not, in fact, an undisclosed principal.

By reason of the posture in which this case comes to this court, prior to disposition of the opposing contentions here, we conclude that it is essential that we set forth the basic principles underlying the results we have reached.

■ This appeal emanates from a judgment of the trial court dismissing plaintiff's petition for failure to state a claim for which relief can be had. The trial court's ruling on a motion of this nature is ordinarily confined to the face of the petition and any exhibits referred to and incorporated therein by attaching the exhibits to the petition. *McDonough v. Aylward*, 500 S.W.2d 721, 722[1] (Mo.1973) Rule 55.33 and Rule 55.14. A party may plead in the alternative or hypothetically, either in one count

or in separate counts, and when two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims as he has whether based on legal or equitable grounds or on both. Rule 55.12.[3] The petition under scrutiny by reason of the attack lodged against it in the motions to dismiss for failure to state a claim must be construed liberally and favorably to the plaintiff, giving her the benefit of all inferences fairly deducible from the facts stated therein. *Jaime v. Neurological Hospital Ass'n of Kansas City*, 488 S.W.2d 641, 643[2] (Mo.1973). The facts alleged in the petition should be assumed to be true. *Hunt v. Dallmeyer*, 517 S.W.2d 720, 723[4] (Mo.App. 1974). If the facts pleaded and the reasonable inferences to be drawn therefrom, viewed most favorably from the plaintiff's viewpoint, show any ground for relief the petition should not be dismissed. *Trotter v. Sirinek*, 515 S.W.2d 67[1] (Mo.App.1974). All pleadings are to be construed so as to do substantial justice, Rule 55.26. By Rule 55.12, upon the institution of her action, plaintiff may set forth statements of two claims alternatively, even though they are inconsistent, and may pursue such claims until in some effective manner she makes an election between such remedies. *State ex rel. Hilleary and Partners, Ltd. v. Kelly*, 448 S.W.2d 926, 931[6] (Mo.App.1969). Exhibits attached to the pleading are a part thereof "for all purposes," Rule 55.14. In reviewing the judgment of a trial court dismissing a petition for failure to state a cause of action the reviewing court will consider all of the facts set out in the petition together with the exhibits attached thereto. *Moffett v. Commerce Trust Company*, 283 S.W.2d 591, 595[1] (Mo.1955), cert. denied 350 U.S. 996, 76 S.Ct. 547, 100 L.Ed.

tion to dismiss as is stated more fully elsewhere in this opinion.

3. The numbers of the Rules of the Supreme Court cited in this opinion are the numbers

assigned to them prior to September 1, 1973 and in effect at all times relative to the issues raised in this court on appeal.

861 (1956), reh. denied 351 U.S. 928, 76 S.Ct. 778, 100 L.Ed. 1458 (1956).

 A reading of the plaintiff's petition makes it clear that she has based her claim in each Count on what she alleges was a group insurance contract. Group insurance as it is known today is of recent origin and differs markedly from other forms of insurance. One of the features which distinguish a group insurance contract from forms of other insurance policies is that a contract of group insurance is a contract between the insurer and the employer for the benefit of the latter's employees and the rights of the employee or his beneficiary are to be determined under the provisions of the contract between the insurer and the employer. *Straub v. Crown Life Insurance*, 496 S.W.2d 42, 43[1] (Mo. App.1973); *Satz v. Prudential Insurance Company of America*, 225 S.W.2d 480, 482[1] (Mo.App.1949). In an action upon a policy of group insurance the burden is on the plaintiff beneficiary to show that the deceased employee was insured under the policy sued upon at the time his death occurred. *Satz v. Prudential Life Insurance Company of America*, supra, l.c. 482[2]; *Longley v. Prudential Insurance Company of America*, 161 S.W.2d 27, 29[2] (Mo.App. 1942).

In *Dowdy v. Lincoln National Life Insurance Company*, 384 S.W.2d 282 (Mo.App. 1964) this court held, l.c. 286[7] that a count of plaintiff's complaint against an insurance company on a group insurance policy issued to the Welfare Association of a labor union which in turn issued certain certificates of insurance under the group policy was erroneously dismissed by a trial court for failure to state a cause of action where the plaintiff alleged the existence of the policy, that she was the beneficiary thereof, the performance or waiver of conditions precedent on her part, the death of the insured, the amount of the insurance, and the fact that this amount is due and payable and has not been paid. The court, l.c. 286, said: "These are sufficient allegations to support an action upon a life insurance policy." In *McDonnell v. Hawkeye Life Ins. Co. of Des Moines, Iowa*, 64 S.W.2d 748 (Mo.App.1933) the court held that to state a cause of action on a life insurance contract, the petition must allege the existence and terms of the policy, the right or interest entitling the plaintiff to sue, performance or waiver of conditions precedent, death of the insured, the amount of the insurance, and fact that it is due and payable and unpaid.

Plaintiff's petition, in its simplest form and viewed most favorably from plaintiff's viewpoint, assuming the facts pleaded to be true, and giving her the benefit of all inferences fairly deducible from the facts stated in her petition, alleges in Count I that McDonnell as General American's agent, made an offer to McDonnell's salaried employees for additional optional life insurance benefits equal to life insurance benefits already enjoyed by the salaried employees to whom the offer was made through a basic group life insurance program via the memorandum of March 14, 1969; that her husband was one of the salaried employees to whom this offer was communicated by means of the memorandum aforesaid, and that he accepted the offer by executing and returning the enrollment card which accompanied the memorandum on or prior to the deadline, April 7, 1969, thereby authorizing McDonnell to deduct from his paycheck the premium stated in the memorandum. She further alleged that McDonnell did deduct this premium from her husband's paycheck. Her theory is that the terms of the group life insurance policy are contained within the four corners of the March 14, 1969, memorandum.

 This court in *Williams v. Metropolitan Life Insurance Company*, 448 S.W.2d 295, 297 (1969), an action on a contract of group life insurance, said: "Insurance policies are contracts . . ." The elements of a contract of insurance, whether written or oral, are (1) a subject matter, (2) a risk or contingency insured against, (3) the amount of the coverage, (4) the duration of the risk,

and (5) the amount of the premiums to be paid for the protection afforded by the insurance contract. *Chailland v. M. F. A. Mutual Insurance Co.*, 375 S.W.2d 78, 81[2] (Mo. banc 1964); 44 C.J.S. Insurance § 227; Couch on Insurance 2d, § 2.1. Each of these elements is present in the memorandum of March 14, 1969. The subject matter of the memorandum was all salaried employees of the named corporations in St. Louis eligible for the optional additional life and accidental death and dismemberment insurance; the risk to be insured against was life and accidental death and dismemberment; the amount of the coverage was equal to the amount provided at no cost to the employee in his basic program; the duration of the risk as set out in the memorandum is for so long as the employee remains in the employment of McDonnell until he reaches retirement, when the amount of the life insurance benefits decrease by a specified percentage to a minimum of 50% of his additional life insurance, and his accident, death and dismemberment benefits terminate altogether upon retirement or upon reaching the age of 65, whichever occurs first; and the amount of the premiums are set at 66¢ per thousand per month until retirement when they are increased to $1.50 per thousand per month. The memorandum announced that the "new program" became effective 7 April, 1969, and despite several references to the "basic life insurance" no statement was contained in the memorandum that the optional additional life insurance and accidental death and dismemberment benefits afforded therein were subject to any or all of the restrictions specified in the "basic program" or "basic life insurance" other than that the amount of the optional additional benefits under the "new program" was in an amount "equal to the amount provided . . . by your basic program." In this review of the trial court's action and judgment we cannot overlook the plaintiff's allegations that this offer was made to McDonnell's salaried employees despite the fact that all of the terms of the group policy had not been finalized; this allegation in the posture in which this case comes before us must be taken as true.

General American contends that the memorandum and enrollment card were no more than proposals to employees to obtain such additional insurance as to which they may have been entitled. In support of this position it argues that no employee could reasonably expect that this same thirteen sentence memorandum and enrollment card constituted a contract "between two large corporations such as General American Company and McDonnell to insure the vast number of employees actively at work at McDonnell."

In support of the first part of this argument General American relies on *Hutchinson v. Metropolitan Life Insurance Co.*, 293 S.W.2d 307 (Mo.1956). We conclude that *Hutchinson* is not controlling here because there a proposal clearly stated that it was "A plan of Double Protection for Mr. Newton Hutchinson," and that it was "only a general description of the benefits available under policies providing the protection outlined." The proposal further stated that the terms and conditions of the benefits contemplated by the plan were set forth in detail in the policy contracts. The court also found in *Hutchinson*, from the evidence in the record, that his actions made it clear that he knew a policy of insurance remained to be issued before he had a binding contract of insurance. The reviewing court had before it evidence adduced at trial by the parties and was not confined to the four corners of the pleadings. We cannot agree with General American that "the thirteen sentence memo" and the enrollment card do not, as a matter of law, constitute the contract of insurance for the benefit of the deceased.

General American cites no authorities to support its argument based upon what employees of large corporations must reasonably expect concerning the length or brevity of contracts of insurance for their em-

ployees and we are not acquainted with any such cases, if they exist.

General American further argues that plaintiff contends that the memorandum and enrollment card take precedence over the master insurance contract, thereby attempting to create an ambiguity where none exists. As we have previously stated, plaintiff's averments are that there was no finalized master insurance contract in existence at the time the memorandum and enrollment card was distributed to McDonnell's employees in March of 1969, other than those documents upon which she founds her cause of action. General American also states that the memorandum was intended to be read together with the terms of the master policy; nowhere does the memorandum so state.

In *Crawford v. Mid-America Insurance Company*, 488 S.W.2d 255 (1972) the Kansas City District of this court held that where, in an action on a student accident policy issued by the defendant insurer to the Putnam County R–1 School District to recover damages for medical expense of a student injured on school property, the insurance application form—Special Notice to Parents—distributed to parents of children attending the school stated that coverage was afforded for participating in or attending school sponsored and supervised activities but the master policy contained more restrictive provisions extending coverage for participation in extracurricular activities under supervision of the policyholder, the policy provisions would be construed against the insurer. The court, l.c. 258, there said, in view of the student's mother's testimony that the application form was distributed to parents to purchase the coverage of the policy: "In such a case the modern trend of authority is that insurer will not be permitted to assert the more stringent provisions of the policy." The court cited pocket part 13, Appleman, Insurance Law and Practice, § 7534, for the observation that: "Fortunately the courts, beginning to realize the realities of the relationship between the parties, particularly

that the contract as set forth in the insurance policy often is practicably unintelligible and generally never read, whereas brochures and other material given out by the insurer are read and relied upon, are now enforcing the contract expected by the insured, that is the contract set out in the brochure or prospectus." General American attempts to distinguish *Crawford* on the grounds that it did not deal with a factual situation involving a contract of insurance between the employer and an insurance company, but rather for the recovery of damages under a group insurance policy between an insurance company and the school district. Both insurance policies in *Crawford* and in this case are group insurance policies; if, as General American contends, the claimant in either case is bound by the terms of the master policy in conflict with the terms set out in the document—be it called a memorandum or Special Notice to Parents,—the purpose of the document in either case is the same, to-wit, to prevail upon the recipient thereof to purchase the insurance contract offered by the insurer through the master policy holder. *Crawford* took cognizance of the vice to be avoided, l.c. 259, where the court said: "When the 'Special Notice to Parents' is considered and compared to the provisions of the policy, not only is the salutary rule of the foregoing authorities and cases offended, but ambiguities as to the extent of the afforded coverage are created."

We do concede that *Crawford* may be distinguished from this case on other grounds though. In *Crawford* plaintiff brought the cause of action on the "student accident insurance policy". In *Crawford* there was no issue as to what constituted the policy of insurance; it was admittedly the master policy issued to the school district. Here, the plaintiff's contention is that the policy of insurance is the "offering brochure" and the enrollment card and that it is on the basis of these documents she is entitled to recover. We conclude that the trial court erred in sustaining General

American's motion to dismiss Count I of plaintiff's Second Amended Petition.[4]

Count II of plaintiff's Second Amended Petition pleads, in the alternative, that her claim is founded on the provisions of "a draft 'master agreement' " dated November 1968, which was offered to the salaried employees of McDonnell by General American through and in conjunction with McDonnell who was the agent of General American in making the offer by means of the "offering brochure" which policy was accepted by executing the enrollment card. This "draft 'master' agreement" was marked as Exhibit "C" and incorporated by reference in this Count of her petition. The return to work clause stated that the effective date of personal insurance was subject to a condition that if at any time during the day immediately preceding the date any insurance of an employee would otherwise first become effective he was by reason of injury or sickness unable to perform active work on a full time basis, whether or not he was scheduled to work on such preceding day, such insurance would not become effective until such time on or after the date such insurance would otherwise first become effective that he perform active work on a full-time basis. According to the terms of this policy, which was to become effective on April 7, 1969, the benefit amounts of the life insurance afforded were to be in an amount equal to the amount for which the employee was already insured under the basic Life Insurance provided under "Policy MCP–5546." (The group policy number of the policy defendants rely on is MCP–5546–A). To avoid the impact of this clause and its effect on her claim, plaintiff averred that its presence in the "draft" of the master agreement was not communicated to her husband and was not mentioned in the "offering brochure; " that by accepting the premium payment with knowledge that her husband was then in poor health and not working, General American waived the condition precedent stated in this clause and is therefore estopped from raising the "return to work" clause as a defense to its obligation to pay her the benefits of the group policy.

In her brief in this court she argues that in the event the draft master proposal is deemed to have retroactive application, the right to work clause has nonetheless been waived by the action of General American or its agent McDonnell in deducting the required premium from her husband's paycheck "with full knowledge of the fact that he was at the time not at work, but was, in fact, ill and in the hospital." That an insurer issuing a group insurance policy can waive some conditions precedent to liability on the group insurance policy has already been decided in this State in *Porter v. Equitable Life Assur. Soc. of U.S.*, 71 S.W.2d 766 (Mo.App.1934), where it was held that under the facts of that case the insurer had waived the necessity of the employee filing a proof of disability, including proof that she was under sixty years of age, although the court found the filing of such a proof of disability together with proof of age was a condition precedent to liability under the terms of the group insurance policy with her employer.

▮ Whether the employer in a group insurance policy situation is, for any purpose, the agent of the insurance company issuing the group policy to the employer as Policyholder for the benefit of its employees is a question to be determined by the particular facts in each individual case.[5] In *Longley v. Prudential Insurance Co. of America,* 161 S.W.2d 27 (1942) and *Satz v. Prudential Insurance Company of America,* supra, 225 S.W.2d l.c. 483, this court has held that where the employee had signed an

---

**4.** We do not consider in ruling on this Count whether the trial court considered Exhibit "C" for the reason that it was neither referred to in this Count nor did the trial court indicate that it did consider it.

**5.** See: W. Meyer, Life and Health Insurance Law (1972) Ch. 23, Group Policyholder as Agent, p. 701; Eugster, Group Insurance: Agency Characterization of the Master Policy-holder, 46 Wash.L.R. 377 (1971).

authorization for the employer to withhold or deduct from the employee's wages or pay the amount of the premium for the group insurance coverage, the employer was, for the purpose of payment of premiums at least, the agent of the employee and not of the insurer. Here, plaintiff alleges that her husband signed an enrollment card acknowledging acceptance of the offer of the additional amount of life insurance to which he was entitled by his base rate of pay "under the group life insurance plan offered by the company" and simultaneously authorized his employer to deduct from his pay the amounts necessary for the insurance premium. We conclude that the holding of *Longley* and *Satz* are distinguishable and for that reason do not control this present case. In each of those cases the question was not whether the policyholder employer was soliciting its employees to enroll in a new program of insurance being offered optionally as additional insurance while the program was still in the negotiation stage. In *Longley,* the employee was killed in an automobile accident almost four months after he had last worked for the employer, having been laid off or furloughed on May 13, 1938. Between January, 1938, when he came under the coverage of the group policy, to April, 1938, deductions were made from his wages by the employer paying his premiums through May, 1938. No deduction was made from his wages for the period of time he had worked in May prior to being laid off, and he paid no premiums thereafter up to the time of his death. Plaintiff, his wife, testified that she went with him to the offices of his employer about one week prior to the date of the auto accident, September 19, 1938, where he gave a ten dollar bill to a man and told him he was going to pay his insurance up because he was going away, and that the man said as he gave him some change, "This pays you up until October." This testimony was refuted by the employees of the employer in charge of the group insurance at the office who testified that no such payment was made, and the records of the employer showed no payment. On Motion for Rehearing, this court in response to plaintiff's contention that the court had decided the case on a different theory than that upon which the defendant had tried the case in the trial court, stated that the record showed that the defendant tried the case on the theory that the plaintiff wholly failed to show that plaintiff's husband was within the coverage of the policy at the time of his death, and that plaintiff submitted her case on the theory that the mere showing that her husband paid his employer the four months premiums in arrears sufficed to bring him within the coverage of the policy. Plaintiff contended that the employer was the agent of the defendant and that the payment of premiums to it was binding on the defendant. In disposing of this contention, the court said 161 S.W.2d l.c. 30–31: "The Pullman Company was a party to the insurance contract entered into between it and the defendant. It was a party to the contract adverse to the defendant. The contract was not a contract of agency. It was a contract of insurance. As a party to the contract the Pullman Company agreed to pay defendant the whole of the premiums as they fell due on the group policy. The portion of the premium to be paid to the Pullman Company by the employee was a matter solely between the Pullman Company and the employee, and was a matter of no concern to the defendant. The obligation was on the employee to pay to the Pullman Company the portion of the premium agreed upon between them." There was no evidence in *Longley* that the employer was soliciting from the employee enrollment in a group insurance policy affording optional additional insurance.

*Satz*, supra, on the other hand, involved a situation where the decisive issue in the case was whether *Satz,* as one of the employees of the master policyholder, was entitled to notice of cancellation of the group policy prior to the time such cancellation could become effective. This issue was decided contrary to his contention that the

policy could not be cancelled without notice to him. Whether his employer was agent for the insurance company was not decisive in the case and came into the case on appeal only because presented to the court by reason of the trial court's finding as a matter of fact that the employer was the agent of the insured employee in collecting the monthly premiums. Although not essential to the decision in the case, the court said, 225 S.W.2d l.c. 483: "The trial court did not err in stating as a basis for his finding that the employer was the agent of the insured in collecting premiums. When the certificate was issued to the insured, Sam Satz, he signed a card containing information required by the insurance company in connection with the group policy, which among other matters, contained the following: 'I hereby authorize Genelle Garment, Inc. (Employer), to deduct from my wages (salary) an amount equal to my portion of the premium, the initial deduction to be .75 cents per month,' etc. Whether or not the employer is the employee's agent throughout the whole transaction, it is clear that in the matter of deducting his contributory part of the premium for the group policy the employee did authorize his employer to act as his agent." Again, the court, in *Satz,* was not confronted with a case where the employer was soliciting participation in the group policy by its employees as here.

The employer, however, has in some instances been held to be the agent of the insurer for some purposes. In *Sullivan v. John Hancock Life Ins. Co. of Boston,* 110 S.W.2d 870, 874[2] (Mo.App.1937) and *Coleman v. Metropolitan Life Ins. Co.,* 127 S.W.2d 764, 770[4] (Mo.App.1939) the employer was held to be the agent of the insurer for the purposes of receiving notice of disability required by the policy. In *Adams v. Metropolitan Life Ins. Co.,* 228 Mo. App. 915, 74 S.W.2d 899, 901[1] (1936) the employer was held not to be the agent of the insurer for the purpose of receiving notice of disability. The cases can be distinguished on their facts and the specific provisions of the policies involved. In *Ad-*

*ams* the policy specifically provided that notice of disability had to be filed in the home office of the insured; whereas the certificate of insurance issued to the employee in *Sullivan* specifically provided that notice of disability be given to the employer. In *Coleman* the certificate of insurance provided that written notice of the injury must be given to the Company within 20 days after the date of accident causing the injury and affirmative written proof of loss furnished to the Company within 90 days after the date of loss for which the claim is made. Finding the certificate to be ambiguous with respect to any requirement that the insured himself give either notice of injury or written proof of loss directly to the insurance company, reference was made to the "Statement of Claim" furnished the employee by his employer's timekeeper and which the insured said he filled out and returned to the timekeeper within six or seven weeks after the accident. This form instructed the employee to answer all questions under the heading "To Be Completed by Employee," then have his own doctor complete the reverse side of the form, "and send to your employer who will forward it to the Metropolitan Life Insurance Company." From this and other evidence the court said, 127 S.W.2d l.c. 770: "It therefore appears that the defendant company itself appointed the employer as its agent for such purposes." In *Brookshire v. Metropolitan Life Ins. Co.,* 56 S.W.2d 817, 819[5] (Mo.App.1937) the employer was held to be the agent for the insurer where an insurance check in payment of a claim was sent to the employer for delivery to the beneficiary of the group insurance policy.

■ Assuming arguendo, as General American contends, the return to work clause in its draft of the master policy controls and would, unless waived, preclude plaintiff from recovery, nevertheless, if, as plaintiff alleges, and we must at this procedural plateau accept as true, McDonnell is the agent for the purpose of soliciting its salaried employees to enroll in the new program of optional additional life insurance,

McDonnell, as soliciting agent, as a general rule has authority under Missouri law to solicit insurance, deliver policies, collect premiums and waive conditions precedent. *Grady v. Hancock Mutual Life Ins. Co. of Massachusetts,* 150 S.W.2d 574, 578[3] (Mo. App.1941). The rationale behind this rule is that the agency carries with it the implied authority to do everything necessary to discharge the business in hand, i. e., the solicitation of the sale of insurance. *Gibson v. Texas Prudential Ins. Co.,* 229 Mo.App. 867, 86 S.W.2d 400, 406 (1935).

Plaintiff relies on *Bohannon v. Illinois Banker's Life Assn.,* 223 Mo.App. 877, 20 S.W.2d 950 (Mo.App.1929) for the proposition that the question of waiver in this case is a jury question. In *Bohannon* the issue was whether the insurer waived a condition contained in its application for insurance providing that the insurance was not to go into effect until after the policy had been issued and delivered to the insured "while she was in good health." The plaintiff, the husband and beneficiary under the policy, advised the defendant's local insurance agent at the time he delivered the policy to plaintiff that his wife had been sick since the date of the application and that she had suffered a miscarriage but was improved. The insured died shortly after the policy was delivered. The court in ruling on the waiver question said, l.c. 951[3]: "We believe the decisions establish the proposition that an insurance agent, clothed with authority to solicit insurance, collect premiums and deliver policies, may receive such notice of the breach of a condition, at the time he may deliver the policy as to bind the insurer by a waiver of such conditions." General American would distinguish the cases on the ground that the agent in *Bohannon* was a "general agent" of an insurance company whereas McDonnell clearly was not. We note that the court in *Bohannon* did not so state; the agent there was a soliciting agent. We do not believe that we can, as a matter of law, hold on a motion to dismiss for failure to state a claim that McDonnell, who is allegedly the agent of General American for the purpose of soliciting insurance, did not have the authority to waive the condition precedent incorporated in the return to work clause of which plaintiff alleges her late husband had no knowledge.

In view of the principles mentioned supra, we conclude that the trial court erred in dismissing Count II of plaintiff's petition for failure to state a claim upon which relief might be had.

Plaintiff's Count III of her Second Amended Petition is pled on the theory that her husband's employer was an undisclosed principal on the insurance contract offered to its salaried employees. McDonnell argues that in alleging that it was "in reality an undisclosed principal" and failing to allege the facts to support that "conclusion" the allegations in this respect must be disregarded as a matter of law.

Plaintiff in her brief bases much of her argument on matters outside the four corners of her pleading, including among other things the deposition of the Manager of Personnel, Welfare and Records of McDonnell. As we have previously pointed out, in ruling on a motion to dismiss the trial court is ordinarily confined to the face of the petition and any exhibits referred to and incorporated therein by the filing of a copy of the exhibit to the petition. *McDonough v. Aylward,* supra. As in Count I of her petition, the contract of insurance alleged in Count III is the "offering brochure" and the enrollment card; no reference is made in this Count to the "draft master agreement" of November, 1968, Exhibit "C", nor is it alleged to be the contract of insurance between plaintiff's husband and McDonnell. McDonnell's argument that McDonnell merely assisted General American in administering a life insurance program and that the group insurance policy was executed by General American alone goes directly in the face of plaintiff's allegations, which, for the purpose of this motion, must be taken as true. McDonnell cites *Cooper v. Metropolitan Life Insurance Co.,* 94 S.W.2d 1070,

1074 (Mo.App.1936) for the proposition that an employer in "this type of situation" cannot be held to be an undisclosed principal. *Cooper* did not involve that question at all. The issue before the appellate court in *Cooper* was whether the trial court erred in failing to sustain an objection to plaintiff's counsel arguing, in his closing argument, the failure of defendant to have produced the former fellow employees of plaintiff as witnesses in the case. The portion of the opinion in *Cooper* cited by McDonnell has reference to a statement in plaintiff's brief to the effect that in insurance matters the employer was to be regarded as the "alter ego" of the insurance carrier writing the group insurance policy because of the administrative details handled by the employer in relation to the group insurance. The real question was whether plaintiff's fellow employees were so peculiarly under the control of or so available to the insurance company that they would naturally have been expected to testify favorably for the defendant and against the plaintiff. In response to plaintiff's "alter ego" argument, the court in *Cooper* held that the employer was not to be regarded as the "alter ego" of the insurer by reason of the fact the employer (1) delivered the insurance certificates to its employees, (2) remitted premiums for them to the insurer, (3) gave notice to employees of the cancellation of their certificates and (4) assisted the employees in the presentation of their claims for benefits. Plaintiff's fellow employees were, the court held, not employees of the insurer, but rather of the employer, St. Joseph Lead Company, and therefore the argument of plaintiff's counsel was reversible error.

The critical issue presented here, both defendants contend, is whether merely alleging that the employer is an "undisclosed principal" is a conclusion or a statement of fact. Taken out of context this position might have some merit, but viewed within the totality of the facts pleaded we find it to be without any validity.

Plaintiff has sought in this Count of her Second Amended Petition to obtain a judgment against both General American and McDonnell, jointly and severally. There can be no joint and several liability between agent and undisclosed principal. It is settled law that one who has dealt with the agent of an undisclosed principal may elect to hold either the agent or, upon learning the facts, the principal, but he cannot hold both. *Kraehe v. Dorsey,* 432 S.W.2d 367, 371[4] (Mo.App.1968) Restatement of the Law, Agency, 2d, §§ 322, 337. The reason such an election must be made is because, unlike a personal injury action, the liability of the agent and the undisclosed principal is an alternative and not a joint liability. Therefore, while plaintiff cannot recover against both McDonnell as a principal, disclosed or otherwise, and General American, as Count III is pleaded, we conclude that she does state a cause of action against McDonnell as a principal and any allegations in this Count relative to General American can be considered mere surplusage, or, in the alternative plaintiff may at some stage of the proceedings be required to make an election before she can proceed further.

We hold, therefore, that the judgment of the trial court dismissing Counts I, II and III of plaintiff's Second Amended Petition with prejudice constituted reversible error and the judgment must therefore be reversed and remanded for further proceedings not inconsistent with this opinion.

SMITH, C. J., and STEWART, J., concur.