JAMES WESLEY WILLIAMS, APPELLANT, v. SUN LIFE ASSURANCE COMPANY OF CANADA, A CORPORATION, RESPONDENT.—148 S. W. (2d) 112.

Kansas City Court of Appeals. December 2, 1940.

*Montgomery, Martin & Montgomery* for respondent.

*Crawford & Harlan* for appellant.

744

SPERRY, C.—James Wesley Williams, plaintiff below, sued Sun Life Assurance Company, defendant, on an insurance contract. There was a directed verdict for defendant and plaintiff appeals.

Plaintiff, on and prior to October 5, 1931, was an employee of Missouri Pacific Railroad Company, hereinafter referred to as employer. He was permanently and totally disabled while so employed in 1936.

Effective as of October 5, 1931, defendant issued to employer its policy of group insurance numbered 1682-G. As initially issued this group policy contained a provision insuring the employees covered, including plaintiff, against total and permanent disability and provided benefits in the amount of $18 per month for sixty months for each thousand dollars of life insurance provided, upon the happening of such contingency. The policy as written ran for the term of one year with the right in the employer to renew said policy for additional terms of one year from the anniversary date thereof. It was issued in consideration of the payment in advance by the employer of certain specified monthly premiums. However, an arrangement existed between the said railroad company and its employees whereby the employees insured under such group contract contributed toward the premium paid by the employer. Such contributions were deducted from plaintiff's monthly pay check.

The policy provided that employees of such employer, within certain specified classes, upon making written application therefor, would be entitled to insurance under such group contract. As to the termination of any individual employee's insurance the contract provided:

"The assurance on each employee covered hereunder shall, while this policy remains in force, continue until written notice shall have been given to the company by the employer, on the form supplied by the company for the purpose, to the effect that the said employee

is no longer in the service of the employer and requesting discontinuance of said assurance. . . . No employee shall be deemed to be assured hereunder after the company has received written notice from employer that such employee has left its service.''

Provision was made for the reinstatement of any employee's coverage which had been cancelled through notice given by the employer. Under Provision V of the group contract the employer was obligated to furnish respondent with the names of employees who should leave the service or be dismissed therefrom, giving the date of termination of service, and provision was made for the refund of any unearned premium which had been paid as to any such employee to carry his insurance beyond the date of the termination of his employment as reported by the employer.

Under the date of October 28, 1931, appellant applied for insurance under such group policy. Effective November 1, 1931, he became insured thereunder in the principal amount of $2000, and there was then issued to him a certificate numbered 2789 certifying that he was insured under such group contract and outlining the coverage to which he was entitled, including coverage against total and permanent disability.

Prior to October 15, 1932, employer and defendant agreed, in a duly executed writing attached to and made a part of said group policy, that such policy should be amended so that the total and permanent disability provisions thereof, as contained in Provision X, should not apply to employees of the employer who should become newly insured after October 15, 1932, or employees whose insurance should be reinstated on or after said date, but that in lieu of such provisions there should be substituted as to such employees a new clause entitled ''Limited Waiver of Premiums on Disability.'' In September, 1933, employer and defendant, pursuant to a writing duly executed and attached to said group policy, again amended same, effective as of the first day of October, 1933, so as to entirely revoke, as to all employees the total and permanent disability provision contained in Provision X of the original policy and to substitute in lieu thereof the ''Limited Waiver of Premiums on Disability'' provisions as incorporated in the amendment last aforementioned.

On the 13th day of January, 1933, defendant received from employer written notice that plaintiff had ceased to be employed by employer as of the 30th day of November, 1932, and requesting the cancellation of his insurance as of such date. Upon receipt of this notice defendant cancelled appellant's coverage in accordance with said request and with the terms of the contract. On May 3, 1933, defendant received from employer written advice that plaintiff had returned to work on April 6, 1933, and that he was in good health at the time of re-employment. Request was made for the reinstatement of his insurance. This application for reinstatement was accepted by

defendant and plaintiff's insurance under the group policy was reinstated effective as of April 6, 1933.

Prior to the time this reinstatement was effectuated the group policy had been amended by the deletion of the original "Total and Permanent Disability" provisions and the substitution in lieu thereof of the "Limited Waiver of Premiums on Disability" provision. Such limited coverage was all that was available to an employee whose insurance had been cancelled out and was reinstated after October 15, 1932, according to the terms of the group policy as it then existed. When plaintiff's insurance was so reinstated defendant issued and delivered to employer, for delivery to plaintiff, a new certificate outlining plaintiff's coverage as modified by the aforesaid amendment to the group policy of October 15, 1932. This new certificate bore the same number as the certificate which had been originally issued to plaintiff; but at the time of the delivery to him of the new certificate the old one was not picked up.

There were two other occasions on which plaintiff's insurance was caused to be cancelled out by his employer and, after a lapse of some time, was reinstated at the request of the employer. During each of the periods during which plaintiff's coverage was so cancelled no payments of premium were made to defendant by employer for insurance coverage on plaintiff; nor did plaintiff make, or tender, any payments of such premiums to employer or defendant. From the date of plaintiff's disability, on February 21, 1936, until date of trial, employer has regularly paid to defendant the premiums necessary to keep in force the insurance on plaintiff; and during all of this time plaintiff has contributed toward such premiums by cash payments to employer.

Plaintiff testified that the new certificate was delivered to him by leaving it on his work bench, where he found it and that he put it in his locker. He kept it there for several months and then took it home and put it with his other insurance papers. He also testified that he did not read the new certificate nor did he know of the amendment in the group policy. He further testified that he did not learn that the disability provisions had been deleted sometime in 1936 or 1937. On January 14, 1938, plaintiff made claim against defendant for total and permanent disability benefits.

It is the established law in this state that where an insurance company has issued a group policy to an employer for the benefit of employees, the contract upon which such an employee must rely in seeking insurance benefits is that set out in the group policy issued to the employer. Suit must be founded on the group policy and cannot rest on the individual certificate issued to employee. [Gallagher v. Simmons Hardware Company, 214 Mo. App. 111, 113; Steffen v. Equitable Life Assurance Society, 64 S. W. (2d) 302, 303; Adair v. General American Life Insurance Company, 124 S. W. (2d)

657, 659, 669.] The rights of plaintiff and the liabilities of defendant were fixed by the terms of the group policy. [Adair v. General American Life Assurance Company, *supra*; Magee v. Equitable Life Assurance Society, 244 N. W. 518.] The Supreme Court of North Dakota, in the last cited case, 1. c. 521, said:

"It will be noted that, so far as the defendant is concerned, this was not an insurance policy carrying a cash surrender value or extension of insurance because of dividends, or earnings as in an ordinary life insurance policy. The beneficiary had no interest in it except that, if discharged, he could convert it into another form of life insurance policy, if his application were made within a specified time. So far as John Magee was concerned, the employer canceled the insurance, without notice, unless he was discharged, and discharge would be notice. This action of the employer absolved the defendant from obligation. [See Kowalski v. Aetna Life Insurance Company, 266 Mass. 255, 165 N. E. 476, 63 A. L. R. 1030.] So far as the defendant is concerned, the rights of the parties were fixed by the contract made with the employer. [See Hardie v. Metropolitan Life Ins. Co. (Mo. App.), 7 S. W. (2d) 746; Stoner v. Equitable Life Assur. Soc. (Pa.), 28 Dauphin County Rep. 235; Thull, etc., v. Equitable Life Ins. Co. (a decision by the court of common pleas of Richland county, Ohio); Davis v. Metropolitan Life Ins. Co., 161 Tenn. 655, 32 S. W. (2d) 1034; and Thompson v. Pacific Mills, etc., 141 S. C. 303, 139 S. E. 619, 55 A. L. R. 1237.]

"The contract known as group policy No. 5,448,244 precludes liability thereunder, unless the name of the employee is certified to the assurance society, is not canceled, and premiums are paid for him monthly. This nonliability here does not arise because the deceased was not in the employ of the company; but because the requirements of the insurance policy were not fulfilled for and on behalf of the deceased. His name was removed and no further premiums paid for him; hence the defendant is not liable on this certificate.

"It is said the defendant failed to notify John Magee that his name was no longer certified and that no further premiums were paid for him. The defendant was not obligated to do so. Had it notified him his name was removed, he could not have paid the premiums himself. If discharged, he could have converted the certificate into another form of life insurance; but this action is predicated on the theory he was not discharged. If not discharged, he could not convert his certificate into this other form of life insurance, and, if discharged, he knew it, and failed to take advantage of this right.

"We are not concerned with whether the employer made a mistake in certifying the deceased was no longer employed, and in failing to pay premiums for him, and thus prevented him from converting the certificate into another policy. This is not an action against the

employer. It did so fail to certify, and did fail to pay the premium; hence there can be no recovery against defendant on the certificate issued to John Magee. "

We have quoted at length from the above opinion because the language there used so clearly applies to the instant case, and because we have not been cited to any Missouri case on all fours with that here considered. To like effect see Aetna Life Insurance Company v. Lembright, 166 N. E. 586, 588; Curd v. Traveler's Ins. Co., 180 S. E. 249; Simsaki v. Equitable Life Assur. Soc., 277 N. Y. Supp. 424; Kowalski v. Aetna Life Ins. Co. (Mass.), 165 N. E. 476.

We hold that employer, by the terms of the group policy, had the specific right to cancel the policy as to plaintiff; that said policy was cancelled, in the manner therein provided, as of November 30, 1932; that prior thereto, on October 15, 1932, the group policy had been amended by striking the provision concerning total permanent disability benefits upon which this suit is founded; and that when plaintiff was reinstated and a new certificate was issued to him on April 6, 1933, he was only entitled to insurance as provided by the group certificate, or the contract of insurance, as it then existed.

Plaintiff says that the original contract remained in force, as to him, because he was never notified that it had been cancelled. If he was actually discharged on November 30, 1932, such discharge was notification to him that his policy became ineffective; and it was *his* *option* under the terms of the original group policy, to convert his insurance. Such action could be initiated only by *him*; and he failed to act. Under no circumstances, then, if his employment actually ceased on November 30, 1932, would plaintiff now be entitled to recover in this case on the original group policy.

But he contends that his employment did not actually cease. This action is predicated on that theory. In that case he had no right to convert the policy; and the policy, as to him, lapsed because no premiums were paid by him, or by anyone else, from November 30, 1932, until April 6, 1933. [Atkinson v. Metropolitan Life Ins. Co., 131 S. W. (2d) 918, 922.] The group policy provided for payment of premiums monthly in advance; and no provision was made for any reserve to be built up on the policy.

Regardless of his right to notice under ordinary circumstances, this policy could not be now enforceable because it lapsed for failure to pay premiums. However, the group policy did not provide for any notice to be given him. The only notice therein mentioned was the one to be given defendant by employer. This case is to be distinguished on the facts from that of Butler v. Equitable Life Assurance Soc., 93 S. W. (2d) 1019, where this court held, l. c. 1024, that cancellation of a certificate issued under a group policy was not valid unless defendant insurance company notified plaintiff of cancellation. In that case it was held that insured had a vested right in the policy

because the master policy provided that he should pay a part of the premiums thereon. Here all premiums were to be paid by employer; and this suit is not against the employer. In Hinkler v. Equitable Life Assur. Soc., 22 N. E. (2d) 451, the policy matured within the thirty-one day grace period after the last premium payment. Here it is admitted that disability was not incurred until some four years after November 30, 1932. Neither decision applies to the facts in this case.

The whole of the master policy is not shown in the record; nor does the record contain the applications signed by employer and plaintiff. We have gleaned the facts herein stated from the stipulation filed below as well as from the oral testimony and the documentary evidence in the record. From the facts as thus determined we think the action of the trial court in directing a verdict for defendant must be sustained.

The judgment is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.