Stanley L. MORRIS, Administrator in the Estate of Jacqueline M. Smith, Deceased, Plaintiff-Respondent,

v.

The TRAVELERS INSURANCE COMPANY, Defendant-Appellant.

No. KCD 27483.

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1976.

Motion for Rehearing and/or Transfer Denied Jan. 31, 1977.

Gene C. Morris, Robert P. Numrich, Kansas City, for defendant-appellant.

Rufus Burrus, Independence, for plaintiff-respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

DIXON, Presiding Judge.

Plaintiff recovered a judgment against defendant insurance company on a group life insurance policy issued to the employer of plaintiff's decedent. Jury was waived. Defendant insurance company has appealed. The single issue presented is that the trial court erred in entering the judgment by creating the coverage under the doctrine of estoppel, contrary to the general rule that coverage cannot be created by estoppel. The judgment is reversed with directions.

This court is indebted to the trial judge for his detailed findings of fact which permit the preparation of a short statement of the relevant facts.

Plaintiff Stanley L. Morris is the Administrator of the Estate of Jacqueline M. Smith, deceased. Jacqueline M. Smith was the widow of Robert C. Smith and the named beneficiary of any life insurance benefits due from defendant. Robert C. Smith died on January 2, 1964. Smith was in the employment of the Bendix Corporation, being paid on an hourly basis. The last day he actually worked was December 20, 1963. Smith was granted a written leave of absence for personal illness beginning December 26, 1963 and ending December 31, 1963, later extended to January 13, 1964. This was approved in writing by different officials of the company on December 27, 1963, December 30, 1963, and January 2, 1964. December 31, 1963 was the last regular working day for hourly employees of Bendix before January 1, 1964. January 1, 1964 would not have been a work day for Smith. Smith's hourly rate of pay at the time he last actually worked at Bendix was $3.49 per hour. Although some payroll deductions were made with reference to the last checks received by Smith, there were no deductions shown for insurance. Defendant Travelers Insurance Company had issued a group insurance policy to the Bendix Corporation effective February 7, 1931. The provisions of the policy have been changed, and the coverage provided has been changed at various times since the inception of the coverage. Since 1961 changes in the group coverage for hourly employees of Bendix have been the result of agreements made by Bendix with the unions which represent its employees. Plaintiff introduced into evidence a "Plan of Insurance," furnished by defendant, setting out the provisions of the revised group insurance policy relating to life insurance benefits for employees of Bendix, effective as of January 1, 1964. This "Plan of Insurance" provided for basic life insurance for those employed on an hourly basis in the amount of $3,000, and for *optional* additional insurance, based upon hourly rate of pay. The additional optional insurance provided for these employees making $3.40 or over per hour is $7,000.

The "Plan of Insurance" with respect to the effective date of the basic $3,000 insurance contained the following:

"(2) Any Employee who is not actually at work on the date his insurance is to become effective shall not be insured until he actually returns to work."

With respect to the effective date of the optional additional insurance, an identical

provision is stated, as above quoted. Under *both* the basic and the additional insurance, monthly contributions by the employee are required. The agreement between Bendix and the labor union, which formed the basis for the revised group insurance plan effective January 1, 1964, provided:

"*Section 10.*

All insurance of employees insured under any existing Group Insurance Plan of the Company prior to the effective date of this Plan, will be terminated on the effective date of this Plan as to employees working on such date, and on the date of return to work for employees not at work on such date . . ."

Under date of January 1, 1964, defendant Travelers Insurance Company issued a "Certificate of Insurance" in the name of Robert C. Smith, employee of Bendix, with Jacqueline M. Smith, wife, as beneficiary. This exhibit was introduced by plaintiff. Plaintiff also introduced certificates issued to Smith under earlier dates, the next most recent one being dated December 1, 1960.

The Certificate of Insurance provides, *inter alia* :

"The Optional Supplemental Insurance described herein is to be effective only if the Employee makes the required payments to apply toward the premium for such insurance.

"This individual Certificate is furnished in accordance with and subject to the terms of said group policies and is merely evidence of insurance provided under said group policies which insurance is effective only if the Employee is eligible for insurance and becomes and continues insured in accordance with the terms, provisions and conditions of said policies."

On the back side of the Certificate, the basic life insurance is listed at $3,000 and the schedule of additional insurance, based upon rate of pay, up to $7,000, is given.

As to the optional insurance, it is stated:

"Each Employee is to be classified and the amounts of insurance applicable to him determined on the date such insurance becomes effective and thereafter on the first day of the second calendar month next following the date of each change in rate of pay in accordance with the table below upon the basis of the Employee's Hourly Rate of Pay, as determined and recorded by the Employer; provided, however, that no change to a class which would provide an increase in amount of insurance shall become effective while the Employee is absent from work. . . ."

No evidence was offered as to the actual delivery date of the Certificate of Insurance dated January 1, 1964. The effective date of the revised group insurance policy of defendant was January 1, 1964, and employees who were actively at work on December 31, 1963 were considered to be actively at work on January 1, 1964. Smith was not actively at work on December 31, 1963, nor at any time thereafter. Defendant has always acknowledged its obligation to pay the sum of $3,000. Plaintiff, although being offered the sum of $3,000, has always contended and claimed the amount due was $10,000.

The fact statement above recited is without attribution by quotation mark almost verbatim excerpted from the trial judge's findings of fact.

The trial judge also made conclusions of law. The court found that the certificate of insurance was presumed to have been delivered to Smith January 1 and the insurance company defendant does not dispute that finding. The court further found as follows:

"Defendant, by its issuance of Certificate of Insurance to Smith under date of January 1, 1964 is estopped from denying that said Certificate was in force and effect at the time of the death of Smith on January 2, 1964 and that the new insurance program (providing coverage up to $10,000 was in effect as to Smith; and is estopped from using as a defense that the new insurance was not effective because Smith was not actually at work on December 31, 1963."

In a short memorandum, the trial judge explicated his conclusion of law. A short

quotation from the memorandum will serve to focus upon the narrow issue upon which this appeal turns:

"The only real issue raised in the case is whether the beneficiary is to be denied the $7,000 additional coverage on the grounds that Smith was not actually at work on December 31, 1963, the last work day before the new insurance became effective. By the terms of the master policy Smith was not entitled to the new insurance until he returned to work.

However, defendant company did in fact issue to Smith a certificate, in effect placing Smith under the provisions of the new insurance. Prior to January 1, 1964 Smith presumably had in his possession a certificate on which he and his beneficiaries had the right to rely. The new certificate expressly 'replaces any and all Certificates previously issued for delivery to the Employee.' On the basis of this new certificate Smith and his beneficiaries had the right to rely on the new coverage provided, and defendant is estopped from denying the coverage as provided under the new group plan. It is to be noted that on the new certificate there is no specific provision indicating it is not effective until Smith should return to work. The provisions that no increase in insurance is to become effective while the Employee is absent from work applies only where there has been a change in the Employee's class. That is not our situation here."

The initial argument of defendant is that coverage cannot be created by estoppel. Defendant points to the trial court's conclusions of law and asserts that the court has created coverage by estoppel. Cited is *Blew v. Conner*, 310 S.W.2d 294 (Mo.App. 1958), modified, *Blew v. Conner*, 328 S.W.2d 626 (Mo. banc 1959), which in turn cites 43 Am.Jur.2d Insurance Section 1184, p. 1103 (then 29 Am.Jur. Insurance Section 903) and 45 C.J.S. Insurance § 674a. The court in *Blew* enunciated the general rule in the following language, l. c. 303:

"While waiver and estoppel may prevent an insurer from asserting a *defense* to coverage otherwise provided by an insurance policy our Missouri appellate courts so far as we have been able to ascertain have not yet permitted the use of either waiver or estoppel to establish coverage in the first instance where none existed before."

Defendant, in support of its position that the rule should be applied to group insurance contracts such as the present one, cites two Texas cases applying the rule to situations where the claimed estoppel arises from a difference between the certificate of insurance furnished and the policy itself. *White v. Great American Reserve Insurance Co.*, 342 S.W.2d 793 (Tex.Civ.App. 1961); *Boyd v. Travelers Insurance Co.*, 421 S.W.2d 929 (Tex.Civ.App.1967).

Plaintiff, on the other hand, vigorously contends that the plaintiff, by introducing the *certificate* and formal proof of death, has made a prima-facie case, relying on *Wilson v. Kansas City Life Insurance Co.*, 233 Mo.App. 1006, 128 S.W.2d 319, 321 (1939), which announces the rule that production of the *policy* and proofs of death and notice make a prima-facie case.

Thus, the primary contention of the defendant is that the certificate of insurance is not part of the policy. The plaintiff, on the other hand, takes the position it *is* the policy.

During argument of this case, counsel for defendant in responding to questions, asserted that under the law of Missouri, as well as generally, the certificate was not a part of the policy. This must be the initial point of inquiry for if, in fact, the "certificate" forms no part of the contract and since the master policy excludes coverage, then as counsel for defendant insist, coverage could not be found except upon the basis of an estoppel. If this analysis were correct, the issue of the extension of the doctrine of estoppel to group life insurance policies would have to be met and decided in this case. If on the other hand, the certificate may be considered as a part of the policy, the case turns on another issue.

As will be later noted, there are many expressions in the cases concerning the role

of the certificate in the group insurance contract which on the face of the language used by the courts would support the defendant's position. Analysis of this language in the light of the holdings of the cases reveals that most such expressions are dictum. An early erroneous classification of group insurance contracts as third party beneficiary contracts gave rise to the notion that the certificate forms no part of the contract.

A review of the authorities so stating and the later authority more carefully analyzing such policies will demonstrate that the attempt to deal with problems of group insurance under the rubric of third party beneficiary contracts has resulted in unnecessary confusion. Included among the authority which has followed the third party beneficiary analysis are 1 Appleman, Insurance Law and Practice §§ 44, 46 (1965 Ed.); 2 Williston, Contracts § 369 (3d Ed.); Comment, 40 So.Cal.L.Rev. 697, 699 (1967). So also the Supreme Court in *Boseman v. Connecticut General Life Ins. Co.,* 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937) [decided prior to *Erie*], in considering whether the law of Texas governed a group policy which was issued by defendant to Gulf Oil Co. in Pennsylvania where the certificate was delivered to Gulf's employee in Texas held that the law of Pennsylvania governed because the insured employees were not parties to the contract and "[T]he certificate is not a part of the contract of, or necessary to, the insurance" l. c. 203, 57 S.Ct. l. c. 690.

In *Boseman,* however, despite the cited language, the court rested the reasoning of the case on the fact that the employee had made application to his employer and a contract between the employer and the insurer had been entered into under the law of Pennsylvania. The dictum is no more than makeweight in the case.

The repetition of the language referring to these policies as third party beneficiary contracts and the corollary, that the certificate is not a part of the policy, easily might be understood as settling the issue. Most, if not all, of these cases can be analyzed in other terms as in *Boseman, supra,* and the notions of third party beneficiary were not essential to the decisions. The textwriters' comments are, of course, a reflection of the language of the cases. In any event, the issue has not been squarely decided in Missouri.

An early Missouri case stated the rule in Missouri to be that a noncontributory group insurance policy is a third party beneficiary contract for the benefit of the insured employee, the certificate issued to the individual employees being merely a statement that they were included in the policy. *Gallagher v. Simmons Hardware Co.,* 214 Mo. App. 111, 258 S.W. 16 (1924). That case considered the narrow issue of whether the insured employee's beneficiary had a cause of action against the employer, plaintiff having dismissed as to the insurance company. The statement concerning the certificate is dictum.

This court appears to have departed from the classification of group insurance contracts adopted in *Gallagher* where the group policy in question was contributory. *Butler v. Equitable Life Assurance Soc.,* 233 Mo.App. 94, 93 S.W.2d 1019 (1936). The following language of the court in *Butler* indicates that where the employee contributes part of the premium, some kind of a contractual relationship arises between the employee and the insurer:

"The discussion of group insurance has frequently been indulged in by the courts of this state, and in these discussions by this court and other appellate courts of this state, the principles applied to contracts between two or more parties for the benefit of a third party has been very closely adhered to.

As to a class of group insurance contracts being entered into in this state, we conclude there has entered an element that is a departure from the ordinary contract entered into by others for the benefit of a third party. The departure is in this, to wit: These group insurance contracts are being based upon considerations that must be paid by the third party. In other words, the third party to secure the benefits are compelled by the

master policy or contract to by their own act accept the provisions of the contract entered into and are bound, by the master contract and by the certificate issued to them, to pay a consideration for benefits inuring to them under the contract." 93 S.W.2d l. c. 1023.

"As to the particular contract before us, the provisions thereof suggest the idea that the meeting of minds, necessary to a contract, centers around the ideas of better employment conditions on the part of the employer and increased business at less overhead upon the part of the insurance company. In other words, the scope of the contracts contemplates more than a mere contract between parties for the benefit of a third party, in that, the master contract provides, first, for the consent, evidenced by application; and, second, a consideration to be paid by the third party for the benefits provided for in the contract. Logical conclusions as to such a contract, we conclude, lead to the conclusion that when a third party makes application and pays the consideration as expressed in the master policy and the same is accepted by the parties in accordance with the terms of the master contract, that such payment and such acceptance endows the third party with a vested interest." (93 S.W.2d l. c. 1023–1024).

In *Butler*, the question was whether the employee was entitled to notice of termination of the policy by her employer. The court held:

"[W]e conclude that as to such a group policy as is involved in this case, wherein the group policy itself *imposes burdens upon the insured employee and provides for a consideration to be paid by the employee for the protection and benefits he secures* thereunder, then and in such event, such an insured is entitled to notice of cancellation." 93 S.W.2d l. c. 1025 (emphasis added).

A comparison of the *Butler* opinion with Corbin's discussion of third party beneficiaries is enlightening.

"In the case of a contract for the benefit of a third person, the contract right always comes to him as a donation, even though the promised performance may not come as a gift. The 'right' is his, therefore, even before he assents. Of course, it is quite possible for two parties to make an offer to a third, whether of novation or otherwise; and there may be cases where it is hard to decide whether the third party was an offeree or a beneficiary. *If the two parties clearly expect the third party to assume burdens and make promises, the transaction is an offer that requires acceptance in accordance with the law governing formation of contracts.*" 4 Corbin, Contracts § 793, p. 135 (1951 Ed.) (emphasis added).

Despite the clear implications of the language in *Butler*, Missouri Courts, including this court, have continued to parrot the proposition of *Gallagher* that group insurance contracts are third party beneficiary contracts for the benefit of the insured employee and the certificate is merely notice to the employee that he is insured under the contract between the employer and the insurance company. *Adair v. General American Life Ins. Co.*, 124 S.W.2d 657 (Mo.App.1939); *White v. Prudential Ins. Co. of America*, 235 Mo.App. 156, 127 S.W.2d 98 (1939); *Brown v. Equitable Life Assurance Soc. of United States*, 143 S.W.2d 343 (Mo. App.1940); *Williams v. Sun Life Assur. Co. of Canada*, 235 Mo.App. 741, 148 S.W.2d 112 (1940); *Nick v. Travelers Ins. Co.*, 238 Mo. App. 1181, 185 S.W.2d 326 (1945), aff'd *Nick v. Travelers Ins. Co.*, 354 Mo. 376, 189 S.W.2d 532 (1945); *Straub v. Crown Life Insurance Co.*, 496 S.W.2d 42 (Mo.App. 1973); *Burckhardt v. General American Life Insurance Co.*, 534 S.W.2d 57 (Mo.App. 1975). See B. Cox, *Group Insurance Contracts for Employees*, 38 Texas Law Review 211 (1959), in support of a third party beneficiary interpretation of group insurance contracts.

An alternative approach to the problems arising under group policies is the reasoning which finds there is a direct contractual relationship between the employee and the insured. *Butler, supra,* is the principal Missouri case which comes close to adopting

this construction, although other jurisdictions have gone farther.

In *Parks v. Prudential Ins. Co. of America*, 103 F.Supp. 493 (E.D.Tenn.1951), *aff'd*, 6 Cir., 195 F.2d 302,[1] the court held that a change in the terms of the master policy of which plaintiff was not notified by issuance of a new certificate was not effective and the provisions as evidenced by plaintiff's earlier certificate governed his rights under the group policy. The basis of this holding was the rule in Tennessee "that one holding a beneficial certificate under a group policy, for which he has paid all or a portion of the premium, has a definite contractual relation with the insurance company," (l. c. 496). In *Equitable Life Assur. Soc. of United States v. Wagoner*, 269 So.2d 747 (Fla.App.1972), the court held that the effective date of insurance as set out in the *certificate* controlled where it differed from the effective date in the master policy. "While the authorities are divided on the question, we believe the better view to be the one which holds that under group life insurance policies there is a contract between the insurer and the individual insured, that the contract consists of both the master policy and the certificate of insurance construed together, and that the ambiguities *or conflicts* between the two must be resolved so as to provide the broadest coverage." l. c. 748. See also *Shea v. Aetna Life Ins. Co.*, 292 Mass. 575, 198 N.E. 909 (1935); *Carruth v. Aetna Life Ins. Co.*, 157 Ga. 608, 122 S.E. 226 (1924); *Van Ostrand v. National Life Assurance Company of Canada*, 82 Misc.2d 829, 371 N.Y.S.2d 51 (1975). The language of the Supreme Court of Massachusetts in *Shea*,[2] *supra*, clearly expresses the logic of considering the employee a party to the contract:

"The policy originally was a contract between the employer and the company. But it contemplated that by making an application for insurance thereunder an employee might become a party thereto. The plaintiff made such an application by which he applied for insurance in accordance with the terms of the policy, and by these terms his application became a part of the insurance contract. . . . The premium paid by the employer was in part paid by it for the plaintiff and such payment was impliedly ratified by him by authorizing the deduction of monthly payments from his wages as his 'contribution toward the cost of this insurance.' In these circumstances the promise of the company to pay insurance benefits on the death or disability of the plaintiff must be regarded as a promise made to him." (198 N.E. 1. c. 911–912)

If an offer of insurance and the promise to insure are viewed as being made by the insurance company to the employee, he should not be viewed as a third party beneficiary since "The fact that the words of promise are directed to him brings him 'in privity' and prevents him from being third party or stranger to the contract." 4 Corbin, Contracts § 779, p. 32 (1951 Ed.). Furthermore, the status of the employee as a promisee would preclude a third party beneficiary interpretation even without a contribution by the employee toward premiums. There are two reasons for this. The first is that even in a noncontributory plan, the employee forgoes other employment to receive this benefit which is, in effect, a detriment under ordinary contract principles. Furthermore, the premiums paid by the employer can be viewed as a substitute for salary so that the economic effect of the transaction is the same as if the employee had received the premium amounts in cash and then paid them directly to the insurer. See *Lecker v. General American Life Ins. Co.*, 55 Hawaii 624, 525 P.2d 1114, 1118

---

1. It is interesting to note that *Butler v. Equitable Life Ins. Soc.* (Mo.App.1936), *supra*, is cited by the court in *Parks* as standing for the proposition that "[T]he employee is entitled to notice of termination of the group insurance *and has a special contract by virtue of his certificate* . . . ." 103 F.Supp. at 497 (emphasis added).

2. *Shea* was an appeal from a directed verdict for defendant insurer. The court held that plaintiff employee was the proper party either as a party to the contract or as a beneficiary under statutory provision.

(1974), *infra* ; Comment, So.Cal.L.Rev., *supra*. Secondly, regardless of whether or not the employee pays any consideration for coverage, his status as a promisee will bring him in privity and preclude him from being a third party beneficiary. "It is possible therefore that a party may be the promisee and the one who will be benefited by performance and yet not the one who gave the consideration. Such a promisee is not a 'third party' beneficiary; but he is a beneficiary of the party who gave the consideration." 4 Corbin, Contracts § 779, pp. 31–32 (1951 Ed.).

The reasoning of some of the textwriters and the case law adopting the approach of a direct contractual relationship between the insurer and the employee seems to be sound in principle. Nor does the repeated use of the third party classification in the case law of Missouri require that such a classification be adopted to exclude the "certificate" as an operative document in the insurance arrangement. An examination of the Missouri authority will reveal that despite the use of language reminiscent of third party beneficiary contracts, the holdings of the Missouri cases are in accord with the notion of a direct contractual relation between the insured and the insurer.

This court in *Butler, supra*, found a contractual relationship between the insurer and employee sufficient to require notice of the cancellation. In *Nick v. Travelers Ins. Co., supra*, this court again found a contractual relationship sufficient to require notice to a discharged employee when the employer exercised a right under the master plan to terminate the coverage. That holding of this court was affirmed on transfer to the Supreme Court.

In *Adair v. General American Life Insurance Co., supra*, the master policy provided coverage for loss of a foot and defined such loss as severance at or above the ankle joint. This definition was omitted from the certificate. The court held that the terms of the master policy governed because the certificate "is not a life insurance contract," and plaintiff can recover only "under the provisions of the group policy, issued to the employer for his benefit." Despite the language quoted, the court decided the case on the basis of a consideration of both the certificate and the master policy saying:

"We think there is no conflict or contradiction as between the two provisions. There can be no ambiguity, because plaintiff is required, by the terms of the certificate itself, to refer to the group policy for exact information and conditions under which he may recover for the 'accidental loss of a foot.'" 124 S.W.2d at 660.

Additionally, the court indicated the terms of a certificate might govern when in direct conflict with those of the master policy.

In *Straub v. Crown Life Insurance Co., supra*, the employee's beneficiary under a group policy sued to recover under two certificates for $10,000 each which were issued to decedent. The second certificate was apparently issued by mistake. The court allowed recovery of only $10,000, merely stating the general rule that group insurance policies are third party beneficiary contracts, and the certificate is not part of the contract. The discussion again centered upon the language of the certificate which was deemed controlling. However, in *Burckhardt v. General American Life Insurance Co., supra*, that same court, although continuing to assert that a contract of group insurance is a third party beneficiary contract, held that the contract of group insurance may consist of more than the master policy between the employer and the insurer. Reversing the lower court's dismissal of Count I of plaintiff's petition, the court refused to hold as a matter of law that the "offering brochure" and enrollment card issued to the employee did *not* constitute the contract of insurance.

■ *Butler* is authority for the proposition that there is a contractual relationship between the insurer and the employee and *Burckhardt* clearly provides that a group insurance contract is not necessarily limited to the four corners of the master policy. Finally, *Adair* indicates the beneficiary might recover in circumstances where a real ambiguity between the policy and the cer-

tificate would result in a detriment to the insured. This is inferentially a statement of the commonly accepted doctrine that where there is room for construction, the contract will be construed against the insurer who prepared it.

The underlying rationale of the Missouri case law is not at war with the better reasoned cases from other jurisdictions. Some have faced the issue more squarely sometimes on the basis of statutory provisions requiring the issuance of such a certificate (which implies it is part of the contract); others unfettered by early decisions classifying the contracts as third party beneficiary contracts reaching the result on ordinary principles.

■ In addition to Tennessee and Florida (see *Parks v. Prudential Ins. Co. of America, supra* ; and *Equitable Life Assur. Soc. of United States v. Wagoner, supra* ), Illinois clearly adopts the position that under contributory group policies, there is a contractual relationship between the employee and the group insurer. It follows from this then that the certificates issued to the individual employees constitute part of the contract. Thus, where there is an ambiguity or conflict between the terms of the master policy and the certificate, general rules of construction which require that ambiguities or conflicts must be resolved in favor of the insured are applied.

Thus, in *Exstrum v. Union Casualty and Life Insurance Company*, 167 Neb. 150, 91 N.W.2d 632 (1958), the Supreme Court of Nebraska, applying Illinois law that the certificate is part of the contract, held that the effective date as set out in the certificate controlled where in conflict with the effective date set out in the master policy because the provision most favorable to the insured must be adopted. See *Thieme v. Union Labor Life Insurance Co.*, 12 Ill. App.2d 110, 138 N.E.2d 857 (1956), where the rule that the certificate is part of the policy is applied to a conflict of laws question. See also the holdings in *Lee v. Insurance Co. of North America*, 397 F.Supp. 426 (E.D.Tenn.1974); *Uptegrove v. Metropolitan Life Insurance Co. of N. Y.*, 145 Neb.

51, 15 N.W.2d 220 (1944); *Aetna Life Ins. Co. v. Wilson*, 190 Okl. 363, 123 P.2d 656 (1942).

In *Lecker v. General American Life Insurance Co., supra*, the master group policy excluded from coverage injuries arising in the course of occupation or employment. This exclusion was not set out in the individual certificates issued the employees. The Supreme Court of Hawaii held that the exclusion could not be enforced because a contrary result would render ineffective the Hawaiian statute which requires that group insurers issue individual certificates summarizing the essential features of coverage. See also *Humphrey v. Equitable Life Assurance Society of America*, 67 Cal.2d 527, 63 Cal.Rptr. 50, 432 P.2d 746 (1967); *Bauer v. Insurance Co. of North America*, 351 F.Supp. 873 (E.D.Wis.1972).

Upon the basis of the foregoing, this case cannot be decided as defendant would insist on the basis of the general rule as to creation of coverage by estoppel. Nor can it turn on the oversimplification urged by the plaintiff that the certificate *is* the policy. Rather, this case as in all the cases reaching the issue of a claim of conflict between the certificate and the policy must be decided under the ordinary principles of contract construction.

■ At this point, it is necessary to advert again to the proofs in this case. Plaintiff produced a booklet or brochure descriptive of the insurance. At the argument, counsel advised that the booklet had been found in the effects of the deceased. This court has recently held that such an offering or descriptive brochure constitutes a part of the insuring agreement. *Crawford v. Mid-America Insurance Co.*, 488 S.W.2d 255 (Mo.App.1972). This holding is in accord with the recent holding in *Burckhardt, supra*, by the St. Louis court.

■ The contract here to be construed is thus the certificate, the plan of insurance and the brochure or booklet all offered in evidence by the plaintiff.

■ The ambiguity if any as to the effective date of the coverage can only arise

from the certificate. As pointed out by the trial court, it does not specifically refer to the necessity for active employment before the coverage becomes effective. The certificate does, however, in an earlier paragraph, clearly state that the coverage is effective only if the employee is eligible and becomes insured.

"This individual Certificate is furnished in accordance with and subject to the terms of said group policies and is merely evidence of insurance provided under said group policies which insurance is effective only if the Employee is *eligible* for insurance *and becomes* and continues *insured* in accordance with the terms, provisions and conditions of said policies." (emphasis added).

Coupled with that is the express language found in the brochure or booklet as follows:

"WHEN YOU ARE INSURED FOR THE BASIC CONTRIBUTORY AND CONTRIBUTORY OPTIONAL SUPPLEMENTAL INSURANCE

All contributory insurance, for which you are *eligible* and have enrolled, *will become effective on the date you become eligible if you are actually at work on that date.*

No evidence of insurability will be required in order to obtain the Basic Contributory and Contributory Optional Supplemental insurance if you return a signed enrollment card within 1 month from the date you are eligible.

It is, therefore, most important that your signed card be returned promptly in order to avoid the possibility of a medical examination that may be required by the Insurance Company and possible refusal of your request for the insurance.

*Employees not actually at work on the date their Basic Contributory and Contributory Optional Supplemental insurance would otherwise become effective, will be insured from the date of return to active employment provided that date is not more than one year later.*" (emphasis added).

Even if the "master plan of insurance" (which, of course, the beneficiary never saw) is excluded from consideration and construing the certificate and brochure most favorably to the beneficiary, there is no room to find effective coverage on January 1st or 2nd before the death of the beneficiary.

Under the provisions of the certificate set forth above, the intent to place conditions upon the existence of any coverage is manifest. The brochure, in readily understandable language, sets forth the conditions for the commencement of coverage.

■ Plaintiff urges that since the defendant has consistently agreed that it was obligated to pay $3,000 on the basic coverage that it has admitted the fact of coverage under the new certificate. This argument is based upon the language of the certificate that states that all prior certificates are cancelled. The argument is faulty on a two-fold factual basis, first until the new certificate became effective, it could have no effect in cancelling a prior certificate; second, the collective bargaining agreement mentioned above clearly saved preexisting coverage for employees not actively at work on the effective date of the new coverage.

■ Corollary to this, the plaintiff urges that the initial letter refusing payment does not raise the issue of a failure of coverage under the master policy by referring specifically to the provision requiring that Smith be actively at work in order to obtain supplemental coverage. Plaintiff for this point relies on cases where a denial of coverage is based on one portion of a policy and subsequently the denial is asserted upon the basis of another separate and distinct theory emanating from a different provision of the policy. See *Morris v. Reed*, 510 S.W.2d 234 (Mo.App.1974); *Kammeyer v. Concordia Telephone Co.*, 446 S.W.2d 486 (Mo.App. 1969); *Aetna Casualty & Surety Co. v. Haas*, 422 S.W.2d 316 (Mo.1968).

The rationale of these cases is that the plaintiff has relied to his detriment on the assertion of the defense by preparation to meet that issue and that the defendant may

not shift the grounds of defense after the fact. No basis exists in this case for the application of these cases. The letter plainly refers to the fact that Smith was not actively at work after January 1st and the defendant has never sought to interpose any different theory to bar the plaintiff's recovery.

In our review of this court-tried case, we reverse if the trial court's judgment is based on an erroneous application of the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo.1976). And we enter the judgment that the trial court should have entered.

The judgment as entered by the trial court was for the plaintiff in the amount of $10,000 plus interest computed upon the difference between the $10,000 and the $3,000 which the trial court specifically found had been tendered by the defendant. Thus, the judgment of $13,392.67 entered by the trial court includes interest upon the $7,000 additional coverage determined by the trial court's judgment. The plaintiff did not file a cross appeal raising any issue with respect to the failure of the trial court to award interest upon the $3,000 conceded to be due to the plaintiff, and the plaintiff is, of course, bound by the unappealed finding by the trial court that a tender was made in the amount of $3,000.

The cause is, therefore, reversed and remanded to the trial court with directions to enter a judgment in the amount of $3,000, said judgment to bear interest at the statutory rate from the date of entry until paid. Section 408.040, RSMo 1969.

All concur.